[No. G037190. Fourth Dist., Div. Three. Feb. 26, 2009.]

BOONCHAI CHINDARAH et al., Plaintiffs and Appellants, v. PICK UP STIX, INC., et al., Defendants and Respondents.

**COUNSEL**

Gigliotti & Gigliotti, Joseph J. Gigliotti; Ginez, Steinmetz & Associates, Rudolfo Ginez and John F. Grotz for Plaintiffs and Appellants.

Employment Rights Attorneys and Richard D. Schramm for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Shea Stokes Roberts & Wagner, Maria C. Roberts, Shirley A. Gauvin, Stacey M. Cooper; Shea Stokes and Arch Y. Stokes for Defendants and Respondents.

O'Melveny & Myers, Scott H. Dunham, Apalla U. Chopra, Adam J. Karr and Andrew R. Escobar for The Employers Group as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

SILLS, P. J.—

FACTS

In February 2003, two former employees of Pick Up Stix, Inc. (Stix), filed a complaint against their former employer alleging claims for unpaid overtime, penalties and interest due to the misclassification of their jobs as exempt from overtime pay. The complaint was amended in July 2003 to allege a proposed class action to recover unpaid overtime on behalf of the plaintiffs and all other current and former general managers, assistant managers, and lead cooks employed by Stix between February 28, 1999, through September 2003.

Stix's attempt to settle the lawsuit through mediation failed. Stix then decided to attempt settlement with as many putative class members as possible. It offered each of them an "amount . . . based upon a figure . . . Stix had previously offered at the mediation." Over 200 former and current employees accepted the offer and signed a settlement agreement, which included a general release. By signing the agreement, the employee acknowledged that he or she had spent more than 50 percent of the time performing managerial duties, released Stix from all claims for unpaid overtime and any other Labor Code violations during the relevant time period, and agreed "not to participate in any class action that may include . . . any of the released Claims . . . ."

Shortly after the settlement agreements were signed, the original plaintiffs filed a second amended complaint including allegations that the settlement agreements violated numerous provisions of the Labor Code. Eight current and former Stix employees who had signed the settlement agreements joined the proposed class action as plaintiffs (the Chindarah plaintiffs).[1] Stix filed a cross-complaint against them, alleging breach of contract and breach of the settlement agreement and seeking declaratory relief. Stix then filed its answer to the second amended complaint, pleading the release as an affirmative defense.

The Chindarah plaintiffs moved for summary adjudication of the cross-complaint, claiming the releases they signed were void under Labor Code sections 206 and 206.5. Stix moved for summary judgment of the complaint, claiming the releases barred recovery by the Chindarah plaintiffs. The trial

---

[1] These plaintiffs are the appellants before us: Boonchai Chindarah, Robert Espinoza, Jose Florida, Nisha Handa, Steve Johnson, Amy Lai, Mark McKeever, and Bill Ratchford.

court found the Labor Code did not prohibit the release of a claim for unpaid wages where there is a bona fide dispute over whether any wages were owed. The trial court found because Stix "produced evidence showing a good faith dispute with regard to classification of the employees," it had "produced evidence . . . creating a triable issue of fact as to whether or not [plaintiffs] were owed *any* additional wages." Finding the releases valid as a matter of law, the trial court granted Stix's motion for summary judgment and denied the motion by the Chindarah plaintiffs.

## DISCUSSION

Labor Code section 206.5 provides: "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee. Violation [of the provisions] of this section by the employer is a misdemeanor."[2] Section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

The release states, "In exchange for the release from Employee set forth below, the Company will pay Employee by check the gross amount of [varied amounts] less payroll deductions, in full and complete satisfaction of all issues and claims by Employee for unpaid overtime, penalties, interest and other Labor Code violations for the time period of February 28, 1999 through September 2003."

The Chindarah plaintiffs contend the release is void as a matter of law to the extent it releases claims for any wages actually due and unpaid and to the extent it constitutes an agreement to work for less than the overtime compensation actually due and unpaid. The Plaintiffs claim "wages actually due and unpaid" means wages that are disputed, if they are ultimately found to be owing. In other words, the Plaintiffs claim *any* settlement of a dispute over overtime compensation runs afoul of sections 206.5 and 1194.

There are no California cases directly on point. The two that come close are *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203 [10 Cal.Rptr.

---

[2] All unspecified statutory references are to the Labor Code.

819, 359 P.2d 251] (*Reid*) and *Sullivan v. Del Conte Masonry Co.* (1965) 238 Cal.App.2d 630 [48 Cal.Rptr. 160] (*Sullivan*). In *Reid*, the plaintiff was a sales representative for the defendant. After the termination of his employment, the plaintiff demanded commissions owed to him, and the defendant sent him a check for approximately $800 "bearing an endorsement that the payment was 'payment in full for all commissions due' under the contract." (*Reid*, at p. 206.) The parties agreed that the plaintiff was owed the amount of the check for orders invoiced at the time of the termination of his employment. But the plaintiff sued to recover commissions on orders obtained before the termination of employment but invoiced after termination. The defendant raised the defense that the plaintiff's retention of the check constituted an accord and satisfaction.

The court acknowledged that "[o]rdinarily the conditional payment of either an amount concededly owed or an amount in excess of that concededly owed is sufficient consideration for a settlement of a bona fide disputed claim." (*Reid, supra*, 55 Cal.2d at p. 207.) In the case of wage claims, however, the Legislature created a specific rule in the form of section 206, subdivision (a): "In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed." The court found no accord and satisfaction could result from the plaintiff retaining the check because "in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance." (*Reid*, at p. 207.) In dicta, the court added the language relevant to the dispute before us: "An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid." (*Ibid.*)

A few years later, the court addressed a similar situation in *Sullivan*. After termination of his employment, the *Sullivan* plaintiff concluded he had not been paid what was owed him by the defendant employer. The defendant sent the plaintiff a check for approximately $7,000, noting on the check that it represented full payment of all money owing to the plaintiff. The plaintiff crossed out that language and cashed the check. He later sued the defendant for additional amounts he claimed were owed. (*Sullivan, supra*, 238 Cal.App.2d 630, 631–632.)

The court found the evidence supported the conclusion that "although the total amount of wages due [the plaintiff] was in dispute, the amount of [the check] was concededly due." (*Sullivan, supra*, 238 Cal.App.2d at p. 633.) Thus, the plaintiff's acceptance of the check did not constitute an accord and satisfaction. In reaching its conclusion, the *Sullivan* court cited not only *Reid*

and section 206, but also section 206.5, which had been enacted in 1959. Citing *Reid*, it went on to note, "This is not to say, however, that an employer and employee may not compromise a bona fide dispute over wages. But such a compromise is binding only if made after wages concededly due have been unconditionally paid." (238 Cal.App.2d at p. 634.)

The Chindarah plaintiffs contend the trial court erroneously lumped sections 206 and 206.5 together and concluded their purpose was to protect employees from employers who attempt to coerce a settlement by withholding wages. They point out that *Reid* did not mention section 206.5, reasoning that it had been enacted after the underlying events in the case. And although *Sullivan* mentioned section 206.5, they contend it did not rely on it for the result. Consequently, they dismiss the language in both cases about the ability to compromise a bona fide dispute over wages as dicta. They argue because section 206.5 does not use the phrase "concededly due," it must refer to *all* disputed wages, asserting that the rules of statutory construction do not allow us to interpret statutes so as to render a provision superfluous. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063].)

The legislative history of section 206.5, of which we take judicial notice, reveals that it was part of Assembly Bill No. 302 (1959 Reg. Sess.), which added section 206.5 to the Labor Code and section 7110.1 to the Business and Professions Code. (Stats. 1959, ch. 1066, § 1, p. 3127.) Business and Professions Code section 7110.1 provides that a licensed contractor who violates section 206.5 would be subject to disciplinary action as well as a misdemeanor charge. A letter to then Governor Edmund G. Brown from the AFL-CIO, which sponsored the bill, stated, "Testimony before legislative committees developed the fact that there exists a rather widespread use of general release forms, particularly in the building industry in Southern California, whereby an individual, as a condition of receiving his payment, is required to forego all his defenses and agree that the payment is full and complete. [¶] Not infrequently the payments were made by bad checks, and accordingly the labor commissioner's office was without power to process the case because of the signing of the release agreement. [¶] The bill is intended to correct this condition, but at the same time to permit payment by check so long as it is honored."

Federal courts applying California law have used *Reid* and *Sullivan* to uphold releases of disputed wage claims. In *Reynov v. ADP Claims Services Group, Inc.* (N.D.Cal., Apr. 30, 2007, No. C 06-2056 CW) 2007 WL 5307977 (*Reynov*), the trial court granted the employer's motion for summary judgment on the complaint by a former employee for unpaid overtime allegedly due to his misclassification as an exempt employee. Shortly after the plaintiff quit his job, he signed an agreement releasing the employer "from 'all claims,

actions, and causes of action, of every kind, nature, and description, which exist as of the date you sign this Letter Agreement, arising out of or related to your employment.' " (*Id.* at p. *1.) In exchange, the plaintiff received "substantial compensation to which he was not otherwise entitled, including a severance payment in excess of $29,000." (*Ibid.*) He also received his outstanding salary and other wages, which were not conditioned on the signing of the release.

■ The plaintiff argued the release was unenforceable under section 206.5. Citing *Reid* and *Sullivan*, the court found that section 206.5 prohibited a release of wages due unless paid in full. "[W]ages are not 'due' if there is a good faith dispute as to whether they are owed. Because [the employer's] defense that [the plaintiff] was an exempt employee under California law would, if successful, preclude any recovery for [the plaintiff], a bona fide dispute exists and the overtime pay cannot be considered 'concededly due.' " (*Reynov, supra,* 2007 WL 5307977 at p. *3; see also *Kelly v. City & County of San Francisco* (N.D.Cal., June 30, 2008, No. C 05-1287 SI) 2008 WL 2662017, p. *4; *Jimenez v. JP Morgan Chase & Co.* (S.D.Cal., May 8, 2008, No. 08-CV-0152 W(WMC)) 2008 WL 2036896, p. *4.)

The Chindarah plaintiffs urge us to look at the law under the Federal Labor Standards Act (FLSA) (29 U.S.C. § 1 et seq.), pointing out that the FLSA has been interpreted as prohibiting employers from obtaining releases of wage claims directly from employees, including claims that are the subject of a bona fide dispute, even though the FLSA contains no express prohibition of releases. But the FLSA has statutory and case law history supporting the conclusion that Congress intended to require the approval of private settlement of FLSA claims by the United States Department of Labor or the district court. (*Lynn's Food Stores, Inc. v. United States* (11th Cir. 1982) 679 F.2d 1350, 1352–1353.)[3] There is no basis for such a requirement to be read into California law.

The Legislature is capable of expressly providing oversight for employee releases or compromises of claims. It did so when enacting section 5001, which bars any compromise or release of such a claim unless approved by the California Workers' Compensation Appeals Board. The Legislature did not enact a similar provision for wage claims.

The Chindarah plaintiffs claim the recent case of *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937 [81 Cal.Rptr.3d 282, 189 P.3d 285] supports their position because it held an employee could not release his

---

[3] Some federal courts have held that private settlements of FLSA claims are enforceable. (See, e.g., *Martinez v. Bohls Bearing Equipment Co.* (W.D.Tex. 2005) 361 F.Supp.2d 608.)

nonwaivable right to indemnity. In *Edwards*, the employee was required to sign, as a condition of release from a noncompetition agreement, a release of his employer for " 'any and all' claims, including 'claims that in any way arise from or out of, are based upon or relate to Employee's employment by, association with or compensation from' [employer] . . . ." (*Id.* at p. 943.) The employee refused to sign the release and sued the employer for intentional interference with prospective economic advantage, claiming the release was wrongful because it required him to waive his right to indemnification from his employer.

The Supreme Court upheld the release because a release of "any and all" claims does not encompass the employee's nonwaivable indemnity rights. The Labor Code expressly states that an employer shall indemnify the employee for any losses caused by the discharge of his duties (§ 2802), and any agreement to waive that indemnity protection is void (§ 2804). (*Edwards v. Arthur Andersen LLP, supra*, 44 Cal.4th at p. 951.) "Therefore, the waiver of 'any and all' claims would not encompass the right to indemnification, because we treat the [release] as expressly incorporating the law that the employee cannot waive that right." (*Id.* at p. 955.)

■ The Chindarah plaintiffs contend because the Supreme Court found that an employee's statutorily nonwaivable indemnity rights could not be waived as part of a general release, a bona fide dispute over past overtime wages cannot be settled. Not so. We recognize that "the statutory right to receive overtime pay embodied in section 1194 is unwaivable." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 456 [64 Cal.Rptr.3d 773, 165 P.3d 556].) But there is no statute providing that an employee cannot release his claim to past overtime wages as part of a settlement of a bona fide dispute over those wages.

■ Section 1194 embodies a public policy " ' " 'to spread employment throughout the work force by putting financial pressure on the employer,' " ' " thus " ' "fostering society's interest in a stable job market," ' " and to protect workers from employer coercion to forego overtime. (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 456.) This public policy is not violated by a settlement of a bona fide dispute over wages already earned. The releases here settled a dispute over whether Stix had violated wage and hour laws in the past; they did not purport to exonerate it from future violations. Neither did the releases condition the payment of wages concededly due on their executions. The trial court correctly found the releases barred the Chindarah plaintiffs from proceeding with the lawsuit against Stix.

## DISPOSITION

The judgment is affirmed. Stix is entitled to its costs of appeal.

Rylaarsdam, J., and Moore, J., concurred.

A petition for a rehearing was denied March 26, 2009, and appellants' petition for review by the Supreme Court was denied June 10, 2009, S171864.