[No. D059137. Fourth Dist., Div. One. June 19, 2012.]

KYLE PULLI, Plaintiff and Respondent, v.
PONY INTERNATIONAL, LLC, Defendant and Appellant.

1508

COUNSEL

Drinker, Biddle & Reath, David Howard Raizman, Paul M. Gelb and Elena S. Min for Defendant and Appellant.

Simpson & Moore, Charles Moore and Sean D. Simpson for Plaintiff and Respondent.

OPINION

AARON, J.—

## I.

## INTRODUCTION

Kyle Pulli filed this action against his former employer, appellant Pony International, LLC (Pony); two entities that allegedly established Pony, Symphony Holdings, Inc. (Symphony), and Infinity Associates, Inc. (Infinity); and an employment recruiting firm, Bialla and Associates, Inc. (Bialla). In his complaint, Pulli alleged that defendants fraudulently induced him to enter into an employment agreement with Pony, and that Pony wrongfully terminated his employment.

Pony filed a motion to compel arbitration in which it argued that all of Pulli's claims against it were subject to an arbitration provision in Pulli's employment agreement. Pulli filed an opposition in which he contended, among other claims, that the employment agreement was unenforceable pursuant to Labor Code section 206.5,[1] which prohibits an employer from requiring an employee to execute "a release of a claim or right on account of wages due . . . ." The trial court denied Pony's motion to compel, concluding that the employment agreement was void under section 206.5 and that the arbitration provision contained in the employment agreement was therefore unenforceable.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Labor Code.

On appeal, Pony contends that the trial court erred in failing to permit the arbitrator to determine whether section 206.5 rendered the arbitration provision in the employment agreement unenforceable. On the merits, Pony contends that the trial court erred in determining that the arbitration provision was unenforceable pursuant to section 206.5.

We conclude that Pony waived its right to have the arbitrator determine the section 206.5 issue. On the merits, we conclude that the arbitration provision is not unenforceable pursuant to section 206.5. Accordingly, we reverse the order denying the motion to compel.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2010, Pulli filed a complaint against defendants. In his complaint, Pulli alleged that as of early 2007, he was employed by adidas International (adidas)[2] and was a "highly respected, award winning designer in the athletic footwear industry." Pulli alleged that in early 2007, defendants promised him "that if he agreed to leave his career with adidas and relocated himself and his family to San Diego . . . he would be given a .75% equity interest in [Pony], that his base salary would be equivalent to what he was paid at adidas, that the position would last for 4 years or longer, [and] that [Pony] was extremely well capitalized and had the wherewithal to pay his compensation, produce his shoe designs and bring them to market." Pulli contended that these terms of employment were memorialized in a written employment offer letter dated April 26, 2007 (April 2007 Offer Letter). Pulli alleged that the day after he received the April 2007 Offer Letter, he resigned his position with adidas, and began working for Pony the following month.

Pulli further alleged that on October 30, 2007, Pony presented him with a "draconian new agreement that essentially reneged on all of the agreements under which [Pulli] agreed to leave adidas and join [Pony]." Pulli also alleged that a Pony employee told Pulli "that [Pulli] either signed the [October 2007 Agreement] or he would never receive any equity in the company."

Pulli maintained that the October 30, 2007 agreement (October 2007 Agreement) was void under section 206.5, as follows: "On October 30, 2007, six months after [Pulli] had left adidas, moved his family from Portland, Oregon to San Diego and worked for months designing footwear, i.e. after [Pulli] had 'burned his bridges' and was locked in as an employee of [Pony], [Pony] presented [Pulli] with a new agreement regarding the promised .75%

---

[2] The adidas corporate name begins with a lowercase letter.

equity stake in [Pony]. The agreement was presented to [Pulli] by Rolleen Jones [(Pony's controller)] and told [*sic*] that either he signed the agreement or he would never receive any equity in the company. The contract itself so provided. At the time [Pulli] had been working for six months and his equity had been vesting for six months. Plaintiff was owed substantial equity in the company and he was told that he would forfeit that equity if he refused to sign. The [October 2007 Agreement] is void under California Labor Code section 206.5."

Pulli alleged that in August 2009, Pony arbitrarily reduced his annual salary by 12 percent, and that in September 2009, Pony terminated his employment summarily and without cause. Pulli also alleged that, upon his termination, Pony refused to pay him a performance incentive that he had earned and also refused to "transfer the .75% in equity" that he had earned.

In a cause of action for fraud against all of defendants, Pulli alleged that defendants fraudulently induced him into accepting the April 2007 offer and entering into the October 2007 Agreement. Pulli also brought claims against Pony for wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, and unjust enrichment and/or quantum meruit.

In November 2010, Pony filed a motion to compel arbitration. In its motion, Pony contended that the October 2007 Agreement contained an arbitration provision that required Pulli to arbitrate all of his claims against Pony. Pony noted that the arbitration provision states in relevant part: "I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE) . . . ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION."

Pony claimed that Pulli was required to arbitrate his claims against the remaining defendants as well, because Pulli had agreed to arbitrate claims against "anyone." Pony contended that the doctrine of equitable estoppel also required Pulli to arbitrate his claims against the remaining defendants. In the alternative, Pony requested that the trial court stay Pulli's action against the other defendants pending the outcome of the arbitration between Pulli and Pony.

Pulli filed an opposition to the motion to compel. In his opposition, Pulli contended that the October 2007 Agreement was "null and void" under section 206.5. Pulli maintained that Pony had threatened to withhold earned wages and equity compensation unless he signed the October 2007 Agreement and agreed to "give up [his] right to a jury trial."

Pulli supported this contention with a declaration in which he stated that an employee of Pony had presented him with the October 2007 Agreement, and told him that if he did not sign the agreement, he would "never receive any further salary or the equity in the company." Pulli further stated in his declaration that at the time Pony presented him with the October 2007 Agreement, he was "owed approximately $7,000.00 in earned wages that [he] would forfeit if [he] refused to sign."

Pulli argued that "[the October 2007 Agreement] reiterate[d] the requirement that [Pulli] give up his right to jury trial or forfeit his earned wages and equity compensation." In this regard, Pulli stated that the October 2007 Agreement provides: " 'As a condition of my employment with [Pony], its subsidiaries, affiliates, successors, or assigns (together the "Company"), and in consideration of my employment with the Company and **my receipt of the compensation now and hereafter paid to me** by the Company, I agree to the following . . . .' " (Boldface added by Pulli.)

Pulli also contended that the October 2007 Agreement was void under section 970, which prohibits making certain "knowingly false representations" to induce a person to change residential locations for employment purposes. In addition, Pulli contended that the arbitration provision in the October 2007 Agreement was unconscionable, and therefore, unenforceable. Pulli also argued that the trial court should deny the motion to compel because the motion seeks "to force [Pulli] to litigate his case in two forums." Pulli argued that the non-Pony defendants could not be compelled to arbitrate because they were not "signing parties to the arbitration agreement."

Pony filed a reply in which it maintained that the October 2007 Agreement was not void under section 206.5. Specifically, Pony argued that section 206.5 contains a narrow prohibition that merely precludes an employer from requiring an employee to release a claim for wages due, and that the October 2007 Agreement contained no such release.

After a hearing, the trial court confirmed its tentative ruling denying Pony's motion to compel. The court's order states in relevant part, "The Court has reviewed the [October 2007 Agreement] as well as [Pulli's] declaration and concludes the agreement is void under Labor Code [section] 206.5. As a result, the agreement to arbitrate is unenforceable. [¶] The motion to compel arbitration is therefore denied."

Pony appeals from the trial court's order.

## III.

## DISCUSSION

A. *Pony waived its right to arbitrate whether section 206.5 rendered unenforceable the arbitration provision in the October 2007 Agreement[3]*

Pony argues that the trial court erred in failing to permit the arbitrator to determine whether section 206.5 rendered unenforceable the arbitration provision in the October 2007 Agreement. Pulli contends that Pony waived its right to arbitrate this issue.

We apply the de novo standard of review in considering whether Pony waived its right to arbitrate the section 206.5 issue, because the facts pertaining to the issue of waiver are undisputed. (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes Medical Center*).)

### 1. *Governing law*

■ "In the arbitration context, '[t]he term "waiver" has . . . been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' [Citation.]" (*St. Agnes Medical Center, supra,* 31 Cal.4th at p. 1195, fn. 4.) " 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citation.]" (*Id.* at p. 1196.) "[A]ny doubts regarding a waiver allegation should be resolved in favor of arbitration . . . ." (*Id.* at p. 1195.)

---

[3] We assume for purposes of this decision that the Federal Arbitration Act (9 U.S.C. § 2 et seq.) governs the issue of arbitrability in this case. Pony contends in its brief on appeal that the Federal Arbitration Act applies, and Pulli does not argue otherwise. Neither party has argued that the application of federal law to the issue of arbitrability would differ in any material respect from California law.

In *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261] (*Doers*), the Supreme Court stated that under California law, "[J]udicial litigation of the merits of arbitrable issues . . . waives a party's right to arbitration." (Italics omitted.) The *Doers* court observed that such an "approach . . . is similar to that taken by the federal courts," noting that under federal law, waiver is found where a party has been prejudiced by the litigation of arbitrable issues. (*Ibid.*; see *St. Agnes Medical Center, supra*, 31 Cal.4th at p. 1203 [citing *Doers* favorably on this point].)

### 2. *Procedural background*

In his complaint, Pulli alleged, "The October 30, 2007 Agreement is void . . . under . . . section 206.5." Pony did not address section 206.5 in its motion to compel arbitration. In his opposition to Pony's motion to compel, Pulli contended that the October 2007 Agreement was "null and void" under section 206.5 because it required him "to give up [his] right to a jury trial or forfeit [his earned] wages and equity [compensation]." In its reply, Pony did not request that the court order Pulli to arbitrate his contention that the October 2007 Agreement was void under section 206.5. Instead, Pony addressed Pulli's section 206.5 claim on its merits.

### 3. *Application*

An application of the factors outlined by the Supreme Court in *St. Agnes Medical Center* makes it clear that Pony waived its right to arbitrate this issue. By submitting the section 206.5 issue to a judicial forum, Pony acted in a manner " ' "inconsistent with the right to arbitrate," ' " and " ' " 'substantially invoked' " ' " " ' " 'the litigation machinery.' " ' " (*St. Agnes Medical Center, supra*, 31 Cal.4th at p. 1196.) With respect to the third factor—a party's delay in seeking arbitration—Pony failed to request arbitration on the section 206.5 issue in the trial court at any time. (See *St. Agnes Medical Center, supra*, at p. 1196.) The fourth and fifth factors—involving counterclaims and the use of discovery (see *ibid.*)—are not directly applicable to this case. Finally, it is clear that Pony's failure to request arbitration of the issue "prejudice[d]" Pulli as that term is used in this context, by permitting "judicial litigation of the merits of arbitrable issues." (*St. Agnes Medical Center, supra*, at p. 1203, italics omitted; accord, *Doers, supra*, 23 Cal.3d at p. 188.)

We reject Pony's contention that it asserted its right to have an arbitrator determine the issue of whether section 206.5 rendered the arbitration provision unenforceable in the trial court. Pony cites portions of its briefing and argument in the trial court in which it sought arbitration of Pulli's contention

that the arbitration provision was void on the ground that he had been *fraudulently induced* to enter into the October 2007 Agreement. In its reply brief in the trial court, after addressing Pulli's section 206.5 claim on the merits, Pony stated in a separate section of its brief, "Plaintiff *also* contends that the [a]rbitration [a]greement is unenforceable because it was procured by fraud. (Opposition at 4–5.)" (Italics added.)[4] Pony proceeded to argue that the question whether the October 2007 Agreement was unenforceable on the ground that it had *fraudulently induced* Pulli's assent to the agreement must be resolved by the arbitrator.

Pony never argued in the trial court that Pulli was required to arbitrate his contention that the arbitration provision was unenforceable *pursuant to section 206.5*. Rather, as noted above, Pony separately addressed the merits of Pulli's contention that the arbitration provision was void pursuant to section 206.5 in its reply brief to its motion to compel arbitration.

Accordingly, we conclude that Pony waived its right to arbitrate the issue whether section 206.5 rendered the arbitration provision unenforceable.

B. *The trial court erred in concluding that section 206.5 renders unenforceable the arbitration provision in the October 2007 Agreement*

Pony contends that the trial court erred in concluding that section 206.5 renders unenforceable the arbitration provision in the October 2007 Agreement. Pony argues that section 206.5 prohibits an employer from *requiring an employee to execute a release of a claim for wages* under specified circumstances, and that the statute does not preclude a party from *waiving its right to a jury trial* by agreeing to an arbitration provision. Pony's contention raises a question of statutory interpretation.[5] We review such questions de novo. (See *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547] [de novo standard of review applies to question of statutory interpretation raised in appeal from an order denying motion to compel arbitration].)[6]

---

[4] On pages 4 and 5 of his opposition, Pulli argued that Pony had engaged in a "transparent fraud" and that the October 2007 Agreement was void under section 970.

[5] Pony argued for the first time in its reply brief that section 206.5 is preempted by the Federal Arbitration Act (9 U.S.C. § 2 et seq.) to the extent that section 206.5 may be interpreted to render an arbitration provision unenforceable. We need not decide whether to consider this argument notwithstanding Pony's failure to raise it in its opening brief, in light of our conclusion that the arbitration provision in the October 2007 Agreement is not unenforceable pursuant to section 206.5.

[6] In resolving Pony's claim on appeal, we assume the truth of all of the evidence that Pulli offered in opposition to Pony's motion to compel arbitration and consider only the statutory interpretation question discussed in the text. Accordingly, we reject Pulli's contention that the substantial evidence standard of review applies to Pony's contention.

### 1. *Principles of statutory interpretation*

In *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417–418 [99 Cal.Rptr.3d 209], this court outlined the following well-established principles of statutory interpretation:

■ " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said', and the plain meaning of the statute governs." [Citation.]' [Citation.]

" 'If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " [Citation.]' [Citation.]

■ " ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.] Further, 'We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules. [Citation.]' [Citation.]"

### 2. *Section 206.5 prohibits an employer from obtaining a release of a claim for wages under specified circumstances, and does not preclude a party from waiving its right to a jury trial by entering into an agreement that contains an arbitration provision*

Section 206.5 provides:

"(a) *An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.* A release required or executed in violation of the provisions of this section shall be null

and void as between the employer and the employee. Violation of this section by the employer is a misdemeanor.

"(b) For purposes of this section, 'execution of a release' includes requiring an employee, as a condition of being paid, to execute a statement of the hours he or she worked during a pay period which the employer knows to be false." (Italics added.)

Pony contends that section 206.5 "narrowly" precludes an employer from requiring an employee to execute a release of a *claim for wages due*, without first paying the employee those wages. Pony implicitly argues further that a party's waiver of a right to a jury trial contained in an arbitration provision does *not* constitute the release of a claim for wages due. In contrast, Pulli contends that section 206.5 precludes an employer from requiring an employee to either agree to an arbitration provision and release his *right to a jury trial* or forfeit wages that the employee has earned. Pony has the better argument.

■ As noted above, the statute precludes an employer from requiring "the execution of a release of a claim or right on account of wages due . . . unless payment of those wages has been made." (§ 206.5, subd. (a).) By prohibiting an employer from requiring the execution of a release unless payment of "wages due" has been made, section 206.5 strongly suggests that the subject of the release must itself be a claim for wages. To interpret the statute in any other manner would be to conclude that the Legislature intended to condition the enforceability of a release for something *other than* "wages due" on the payment of those wages. (*Ibid.*) The text of section 206.5 thus strongly suggests that the statute precludes the execution of a release of a claim or right *for wages*.

To the extent the text of section 206.5 is ambiguous with respect to whether the statute restricts an employer from requiring the execution of a "release" of the right to a jury trial on "wages due" (§ 206.5), any such ambiguity is removed by consideration of section 229. Section 229, which the Legislature adopted in 1959—the same year it enacted section 206.5— rendered unenforceable "any private agreement to arbitrate" a claim for the "the collection of due and unpaid wages."[7] (Stats. 1959, ch. 1939, § 1, p. 4532.) Any contention that the Legislature intended section 206.5 to preclude an employer from requiring that an employee agree to an arbitration

---

[7] In *Perry v. Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520], the United States Supreme Court held that section 229 was preempted by the Federal Arbitration Act. (*Perry v. Thomas, supra*, at p. 491 ["clear federal policy places [section] 2 of the [Federal Arbitration Act] in unmistakable conflict with California's [section] 229 requirement that litigants be provided a judicial forum for resolving wage disputes"].)

provision related to a wage dispute *"unless payment of those wages has been made"* (*id.*, subd. (a), italics added) is untenable in light of the fact that the Legislature had already declared in section 229 that agreements to arbitrate wage disputes were *wholly unenforceable.*

A consideration of the purpose of section 206.5 further supports the conclusion that section 206.5 merely prohibits an employer from requiring an employee to execute a release of a *claim for wages due*, and places no limitations on the enforceability of arbitration provisions. In *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 801 [90 Cal.Rptr.3d 175] (*Chindarah*), the Court of Appeal reviewed the legislative history of section 206.5 and explained the purpose of the statute as follows: "A letter to then Governor Edmund G. Brown from the AFL-CIO, which sponsored the bill, stated, 'Testimony before legislative committees developed the fact that there exists a rather widespread use of general release forms, particularly in the building industry in Southern California, whereby an individual, as a condition of receiving his payment, is required to forego all his defenses and agree that the payment is full and complete. [¶] Not infrequently the payments were made by bad checks, and accordingly the labor commissioner's office was without power to process the case because of the signing of the release agreement. [¶] The bill is intended to correct this condition, but at the same time to permit payment by check so long as it is honored.' "

The statements from the sponsor of the bill that became section 206.5 support the conclusion that the Legislature intended for section 206.5 to restrict an employer's ability to require the execution of a release agreement *for wages due.* (See *Dubins v. Regents of University of California* (1994) 25 Cal.App.4th 77, 86–87 [30 Cal.Rptr.2d 336] ["courts inquiring into legislative purpose give consideration to statements made by the sponsor of a bill . . . ," and may infer legislative intent from such statements where they are " 'consistent with the statutory language and other legislative history . . .' [citation]"].)

■ In addition, the relationship between section 206.5 and section 206 further supports the conclusion that section 206.5 restricts the execution of a release of *wage claims* and has no application to a release of *jury trial* rights. Subdivision (a) of section 206 provides, "In case of a dispute over wages, the employer shall pay, without condition . . . , all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed." In *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1586 [92 Cal.Rptr.3d 409], the Court of Appeal explained that that "section 206.5 is to be read in light of . . . section 206" (citing *Chindarah, supra*, 171 Cal.App.4th 796), and that "section 206.5 simply prohibits employers from *coercing settlements* by withholding wages

concededly due." (*Watkins v. Wachovia Corp., supra,* at p. 1587, italics added.) Requiring an employee to agree to an arbitration provision is not a method of coercing a settlement.

The legislative history of section 206.5 also fully supports the conclusion that the statute precludes the execution of a *release of a wage claim,* unless payment of those wages has been made. There are numerous statements to that effect made by those involved in the legislative process. (See, e.g., Legis. Counsel, Rep. on Assem. Bill No. 302 (1959 Reg. Sess.) [stating that the bill "[m]akes it a misdemeanor for an employer to require the execution of any *release of any claim or right for wages* unless payment thereof has been made" (italics added)]; Assemblyman Edward Gaffney, letter to Governor Edmund G. Brown re Assem. Bill No. 302, June 11, 1959 ["The bill makes it a misdemeanor for an employer to require the execution of any *release of any claim or right for wages*" (italics added)]; John Henning, Dir. of Dept. of Industrial Relations, letter to Julian Beck, Legis. Sect., Governor's Office, May 28, 1959 ["it will be a misdemeanor for an employer to require execution of a *release of claim for wages*" (italics added)].)

In addition, the Legislature has demonstrated an awareness of its ability to amend section 206.5 to broaden the definition of what may constitute a "release" within the scope of the statute. In 2008, the Legislature added subdivision (b) to section 206.5, to state, "For purposes of this section, 'execution of a release' includes requiring an employee, as a condition of being paid, to execute a statement of the hours he or she worked during a pay period which the employer knows to be false." (Stats. 2008, ch. 224, § 1, eff. Jan. 1, 2009; see Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 2075 (2007–2008 Reg. Sess.) as amended June 11, 2008, p. 1 ["Current law prohibits an employer from requiring the execution of a *release of a claim on wages due,* unless payment of those wages has been made." (italics added)].) In contrast, there is no language in section 206.5 suggesting that the phrase "execution of a release" includes requiring an employee, as a condition of being paid, to agree to an arbitration provision.

■ Accordingly, we conclude that section 206.5 prohibits an employer from obtaining a release of a claim for wages under specified circumstances, and does not preclude a party from waiving its right to a jury trial by entering into an agreement containing an arbitration provision.[8]

---

[8] We emphasize that we consider here only the narrow statutory interpretation question of whether *section 206.5* prohibits an employer from putting an employee to the choice of either agreeing to an arbitration provision and releasing his right to a jury trial or forfeiting wages that the employee has earned. We express no opinion concerning whether an employer might be precluded from requiring an employee to make such an election under other principles of law.

Pulli also contends that the October 2007 Agreement required him to "release his rights to [earned] compensation established in the [April 2007 Offer Letter]," and thus, that the Agreement required him to waive his right to a claim of wages due, within the meaning of section 206.5. Pulli argues that the October 2007 Agreement, including the arbitration provision, is unenforceable for this reason. We need not, and do not, decide whether the October 2007 Agreement contains such a release. Even assuming that the October 2007 Agreement contains a release of a claim for wages, and that section 206.5 renders the release "null and void," by its express terms, section 206.5 would invalidate only the release,[9] and would not render unenforceable the arbitration provision in the October 2007 Agreement. (See *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445 [163 L.Ed.2d 1038, 126 S.Ct. 1204] ["as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"].)[10] Stated differently, the existence of an invalid release of a *wage claim* pursuant to section 206.5 in an agreement does not provide a defense to the enforcement of an *arbitration* provision contained in the same agreement.

■ Accordingly, we conclude that the trial court erred in determining that section 206.5 renders the arbitration provision in the October 2007 Agreement unenforceable.[11]

IV.

DISPOSITION

The order denying the motion to compel arbitration is reversed. With the exception of the section 206.5 issue addressed in this opinion, the trial court

---

[9] As noted above, section 206.5 provides in relevant part, "A *release* required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee." (Italics added.)

[10] In addition, the October 2007 Agreement at issue in this case contains a severability provision that states, "If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect."

[11] In light of our conclusion, we need not consider Pony's additional arguments in support of its claim that the trial court erred in ruling that section 206.5 renders the arbitration provision in the October 2007 Agreement unenforceable. Specifically, we need not consider Pony's contention that Pulli manifested his assent to be bound by the arbitration provision in the October 2007 Agreement by remaining employed with Pony for approximately two years after signing the October 2007 Agreement. Nor need we consider Pony's contention that "there is . . . no evidence that Pony threatened to withhold [Pulli's] wages due."

may consider all of the contentions that Pulli raised in his opposition to the motion to compel on remand.[12] Pony is entitled to recover its costs on appeal.

McDonald, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied July 6, 2012.

---

[12] We deny Pony's request that we direct the trial court, on remand, to order the matter to arbitration on the theory that the trial court "implicitly rejected" the other contentions that Pulli raised in his opposition to the motion to compel.