Filed 1/6/26  Ocampo v. Mapes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICARDO ALEXANDER OCAMPO et al.,<br><br>    Plaintiffs and Respondents;<br><br>ANDREW MAPES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NOR-CAL BEVERAGE CO., INC.,<br><br>    Defendant and Respondent. | G064447<br><br>(Super. Ct. No. 30-2021-01226173)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh and William Wilkinson for Plaintiff and Appellant.

Potter Handy, Mark D. Potter, James M. Treglio and Jason Kyle Masanque for Plaintiffs and Respondents.

Greenberg Traurig, Karin L. Bohmholdt, Ellen Bronchetti and Tayanah C. Miller for Defendant and Respondent.

\*     \*     \*

Plaintiff and appellant Andrew Mapes appeals from an order denying his motion to set aside the judgment in a wage and hour class action between plaintiffs and respondents Ricardo Alexander Ocampo et al., and defendant and respondent Nor-Cal Beverage Co., Inc. (Nor-Cal) (collectively respondents). The contested order granted a motion for final approval of a settlement between the class and Nor-Cal. Mapes argues the trial court failed in its "sacred duty" to protect the interests of unnamed class members. We find no abuse of discretion and affirm the order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Nor-Cal is a beverage co-packing company and equipment solutions provider. In January 2021, Ocampo was hired as a Filler Machine Operator II and assigned to Nor-Cal's production facility in West Sacramento. He was paid $18.58 per hour, and he resigned approximately three months later, in April 2021.

On June 22, 2021, a former Nor-Cal employee named Stefan Mayers filed a representative action pursuant to the Private Attorney General Act of 2004 (PAGA) against Nor-Cal seeking civil penalties for alleged Labor Code violations (the Mayers action). Mayers is not a party to the instant case.

On July 20, 2021, Ocampo submitted a notice letter to the Labor Workforce Development Agency (LWDA) alleging PAGA claims based on Labor Code violations. On October 13, 2021, Ocampo filed a putative class action and representative complaint (the instant case or Ocampo action) alleging (1) failure to pay all wages owed; (2) failure to pay all overtime

2

wages owed; (3) failure to provide meal periods and pay missed meal period premiums; (4) failure to provide paid rest breaks and pay rest break premiums; (5) failure to provide accurate wage statements; (6) failure to pay all wages owed in a timely manner; (7) failure to pay all wages due to former employees; (8) failure to provide a day of rest; (9) violation of PAGA; and (10) unfair business practices under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.). The class period was from October 13, 2017, through the date of trial. Ocampo later amended the complaint to allege claims for unreimbursed business expenses for cellular phone use and failure to provide sick pay.

In January 2022, NorCal removed the Ocampo action to federal court. Ocampo's motion to remand was granted in April 2022.

In March 2022, the parties in the Mayers action attempted to mediate the case, but a settlement could not be reached.

Starting around June 2022, NorCal began an effort to negotiate individual settlements with current and former employees who were putative class members in both the Ocampo and Meyers actions. Such settlement efforts are permissible pursuant to *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796 (*Pick Up Stix*). According to NorCal, of the 1,189 individuals in the class, 1,047 agreed to settle, and NorCal paid out $1.32 million to these class members.

In June 2022, Mapes filed a putative class action against NorCal, largely alleging the same causes of actions as Ocampo. Several months later, having learned of NorCal's settlement efforts, Mapes propounded discovery about the settlement negotiations with class members. NorCal produced responses and documents.

In August 2022, the parties to the Ocampo action attended an all-day mediation with Honorable Andrew Guilford (Ret.). Prior to the mediation, the parties informally exchanged discovery, including a sample of the individual releases and other documents. According to Judge Guilford, "[t]he mediation was long and contentious . . ." and "[t]here was no collusion between the parties."

During the mediation, the parties reached an agreement to settle the case for $390,000, in addition to the amount NorCal had agreed to pay in individual settlements, resulting in a proposed net recovery of $1.75 million. Once deductions were made for "attorneys' fees, litigation costs, claims administration costs, the LWDA's portion of PAGA penalties, and Class Representative Enhancement Payment," the amount available to the class members was approximately $160,000. In the following weeks, they executed a long form settlement agreement. Pursuant to the agreement, Ocampo dismissed NorCal from the action and submitted a stipulation and proposed order. In support of the proposed order, Ocampo's counsel, James M. Treglio, submitted a detailed declaration providing calculations for NorCal's risk exposure on each cause of action. Ultimately, Treglio estimated that each of the 1,270 members of the proposed settlement class would receive $1,194.49, including the settlements already paid.

In May 2023, the court continued the hearing on Ocampo's motion for preliminary approval of the settlement, instructing the court to cure numerous deficiencies. Among other things, the court was unsatisfied because "Plaintiff provides no information as to defendant's potential exposure for plaintiff's claims for failure to pay all wages owed, failure to pay all overtime wages owed, failure to pay all wages owed in a timely manner, waiting time penalties, failure to provide a day of rest, failure to reimburse

4

business expenses, and unfair competition. Plaintiff must provide the court with information showing what potential outcome putative class members and aggrieved employees are giving up in exchange for this settlement." The court further noted that "Plaintiff has not provided the court with the estimated high and low payments to class members or aggrieved employees under the proposed settlement. These estimates are needed to assist the court in properly determining the fairness of the proposed settlement. If the figures are not available now, they must be provided in the motion for final approval." In addition, the court found "The allocation of only 20% of the settlement payments for wages appears to be low. The estimated exposure analysis in the motion allocates over 90% of the class members' potential (non-PAGA) recovery to wages. Either an increase to 33 1/3% or an explanation of why the figure is not at least 33 1/3% is required."

Ocampo and NorCal provided supplemental documentation as required. On July 31, 2023, the court preliminarily approved the proposed settlement, including attorney fees of up to one-third of the gross settlement amount ($130,000) and litigation costs up to $20,000. The court also conditionally certified the class for purposes of settlement as "'persons who are or were employed by Defendant or its predecessor or merged entities in California as hourly, non-exempt employees'" for one or more pay periods at any time during the class period. The court scheduled a final approval hearing for December.

Notice was sent to the class members. A handful of class members requested exclusion and one objection—by Mapes—was filed. Ocampo filed a motion for final approval of the settlement in November 2023 for a somewhat larger class, which the trial court granted in March 2024.

5

Mapes filed a motion to set aside the judgment which the trial court denied. Mapes now appeals.

## DISCUSSION

### I.

#### RELEVANT PRINCIPLES AND STANDARD OF REVIEW

The settlement of a class action requires approval to prevent fraud or collusion between the defendant and class representative, and unfairness to the class. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800 (*Dunk*); see *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 534.) "The purpose of the requirement is 'the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties.'" (*Dunk,* at p. 1801.) The trial court must also give due regard to the parties' private consensual agreement. (*Ibid.*)

Depending on the specific case, the trial court may consider many potentially relevant factors, including "[(1)] the strength of plaintiffs' case, [(2)] the risk, expense, complexity and likely duration of further litigation, [(3)] the risk of maintaining class action status through trial, [(4)] the amount offered in settlement, [(5)] the extent of discovery completed and the stage of the proceedings, [(6)] the experience and views of counsel . . . and [(7)] the reaction of the class members to the proposed settlement." (*Dunk, supra,* 48 Cal.App.4th at p. 1801.) "'Ultimately, the [trial] court's determination is nothing more than "an amalgam of delicate balancing, gross approximations and rough justice."'" (*Ibid.*)

"'We review the trial court's decision to approve a class action settlement in order to determine whether the trial court acted within its discretion. We do not reweigh the evidence or substitute our notions of

fairness for the trial court's. [Citations.] "To merit reversal, both an abuse of discretion by the trial court must be 'clear' and the demonstration of it on appeal 'strong.'" [Citation.]' [Citation.] 'Our review of the trial court's approval of a class action settlement is limited in scope. We make no independent determination whether the settlement terms are "fair, adequate and reasonable," but only determine whether the trial court acted within its discretion.'" (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 581.)

## II.

### REVIEW OF INDIVIDUAL RELEASES

Relying entirely on federal law, Mapes[1] argues the trial court failed to adequately examine the individual releases that reduced the settlement class size and incorrectly determined it lacked the power to invalidate individual releases. Among other things, he contends that *Gulf Oil v. Bernard* (1981) 452 U.S. 89, gives trial courts the power to do so.

It is important to note what the trial court did and did not say. In denying Mapes's motion to set aside the judgment, the court stated: "Mapes . . . fails to provide any binding authority compelling the court to invalidate those settlements, relying again on non-binding federal authority and inapplicable case law concerning the inherent powers of the court to issue sanctions." The court's statement is correct. Mapes's argument rests entirely on nonbinding federal authority, which the trial court was entitled to rely on

---

[1] Ocampo contends Mapes lacked standing to file a motion to vacate the order approving the settlement, relying on *Moniz v. Adecco USA, Inc.* (2025) 109 Cal.App.5th 317, holding that an objector in a PAGA action lacked standing to challenge the judgment. While this case includes a PAGA claim, it is not solely a PAGA action. We therefore find this contention inapplicable.

7

or disregard as appropriate under the circumstances. Federal authority is only helpful to the extent it assists the court in answering the relevant question under California law: Is this settlement fundamentally fair or unfair? Whether or not the court had the inherent power under California law to invalidate individual releases does not help to answer this question.

What is relevant, however, is that pursuant to *Pick Up Stix, supra,* 171 Cal.App.4th 796, employers are permitted to engage in good faith attempts to settle claims individually with members of a putative class. Mapes contends the court should have conducted a "greater inquiry" into the individual releases, but he provides no binding legal authority requiring the court to do so.

Mapes admits that the facts here regarding the number of releases do not "necessarily foretell the inadequacy of the class settlement nor the invalidation of the individual releases." His argument that the court was required to independently analyze over 1,000 releases due to his belief that "red flags" existed is not supported by California law. As the trial court noted, "Mapes does not contend that the settlements should be invalidated, but argues that the court should scrutinize them more closely. Mapes argues that there is no evidence that the exemplar defendant produced is the same settlement communication used with the 1,061 individual settlements, and that the court must evaluate them more closely to ensure there was no wrongful communication. Mapes fails to identify the remedy such scrutiny would lead to, absent invalidating the settlements, so it is not clear what he wants the court to do differently even if the details for all 1,061 of the *Pick Up Stix* settlements were provided to the court. Mapes seems to be arguing that defendant needed to tell each settling employee the individual strength of their claim, the causes of action and time periods covered by the *Mayers*

8

and *Ocampo* actions against defendant, and a valuation of the claims against defendant, but provides no authority requiring such notice. Thus, Mapes has not shown that the court's evaluation of those settlements was in any way legally erroneous."

On appeal, Mapes contends that facts surrounding the releases show "myriad signs of impropriety." (Capitalization omitted.) But the facts he points to, such as the use of *Pick Up Stix* settlements to "neuter[]" the class action are expressly legal. He claims it is of import that the number of settlements here was substantially larger than in *Pick Up Stix* itself, but points to no authority supporting that the number of settlements is pertinent. He claims "the timing and context" matter, but not how it impacted the fairness of the individual settlements. He claims on one hand the information provided to the trial court was inadequate, yet goes on to note that both Ocampo's counsel and the mediator scrutinized some of the individual releases, and further, the mediator's proposal took the individual releases into consideration. An exemplar release was provided to the court for review. Mapes further claims the individual releases were deficient, assuming potential "abuse," but, as the court found, he does not establish the releases or communications leading to signed releases were coercive or improper, or that the substance of the communications violated the law. We find no error.

III.

EXPANSION OF THE SETTLEMENT CLASS

Mapes's next contention is that the court did not independently determine the fairness of expanding the settlement class by 225 individuals, essentially arguing the approved settlement was not supported by the evidence. The court did, however, appropriately determine the fairness of the overall settlement, and that determination was not an abuse of discretion.

A class action settlement is presumptively fair if "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Dunk, supra,* 48 Cal.App.4th at p. 1802; see *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128.) Mapes has the burden to rebut this presumption (*Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 820), and we conclude he has failed to do so.

"In the context of a settlement agreement, the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 250 [disapproved of on other grounds by *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269].) A settlement need not be perfect, and it certainly does not have to reflect 100 percent of the damages alleged as to each class member. (*Wershba*, at p. 250.) It must simply be reasonable, and as we noted *ante*, it is not the role of this court to substitute its own version of reasonableness for the trial court's. Our role is strictly limited to determining whether the trial court abused its discretion. (*Nordstrom Com. Cases, supra,* 186 Cal.App.4th at p. 581.)

We do not find an abuse of discretion here. Ocampo's counsel explained the increase in the class size was due to hiring and retention of nonexempt employees between the filing for preliminary approval and a continuance in the hearing date. Thus, 169 of the 225 new class members were hired after mediation. The new hires "were not subject to work environments conducive to the alleged violations," and were therefore presumably entitled to smaller shares of the settlement.

Mapes contends the trial court should have subjected the increase on the class size to a "greater showing of fairness" and that "dilution is dilution," without explaining what more, exactly, the court should have required or how the failure to require it constituted an abuse of discretion.

The settlement was reached after litigation through an arms-length bargaining process conducted by qualified class attorneys. Mapes, the proponent of a competing class action, was the sole objector. He has not met his burden to overturn the settlement.

## DISPOSITION

The court's order is affirmed. Respondents are entitled to their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.

11