Filed 4/23/14  Certified for partial publication 5/21/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SEAN GLOSTER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SONIC AUTOMOTIVE, INC., et al.,<br><br>    Defendants and Appellants. | A137081<br><br>(San Mateo County<br>Super. Ct. No. CIV505781) |

Plaintiff Sean Gloster filed an employment-related lawsuit against his former employer, defendant Melody Toyota (Melody), Melody's parent corporation, other employees, and a third party. Although Melody and its related defendants warned Gloster prior to his filing of the lawsuit they would insist on arbitration under his employment agreement, the defendants waited until a year after the complaint was filed before petitioning the trial court to compel arbitration, filing a motion for summary judgment along with the petition. The trial court denied both the motion and the petition, reasoning defendants had waived the right to arbitration by their delay and the joinder of the third party created a risk of inconsistent rulings. We conclude the denial of the summary judgment motion is not appealable and dismiss the appeal to the extent it seeks review of this order, but we reverse the trial court's denial of the petition to compel arbitration.

## I.  BACKGROUND

Gloster is a former employee of Melody, a subsidiary of defendant Sonic Automotive, Inc. (Sonic). In May 2011, Gloster filed suit against Melody, Sonic, and

other defendants. The first amended complaint, filed the next month, alleged causes of action for retaliation, constructive termination, and other claims related to Gloster's employment. In July, all of the defendants except Toyota Motor Sales, U.S.A., Inc. (Toyota) filed a joint answer to the first amended complaint, asserting as an affirmative defense, among others, that Gloster was required to arbitrate his claims.[1] The Melody defendants took no immediate action to enforce their claimed right to arbitrate, but in their first case management statement, dated September 13, 2011, they informed the court they would be "filing a Motion for Summary Judgment on the issue of whether Plaintiff has waived his rights to bring these claims and in the alternative for an Order compelling Plaintiff to binding arbitration pursuant to the parties' written arbitration agreement."

The prior month, Toyota, which was alleged in the complaint to be "Toyota's U.S. sales and marketing arm" and to have "acted in concert" with the Melody defendants, had filed a demurrer, arguing the complaint failed to state a claim against it because Toyota was not alleged to be Gloster's employer and the complaint contained no allegation of wrongful acts by Toyota employees. For reasons that are not entirely clear, Gloster filed no response to the demurrer until December, when he attempted to file a second amended complaint. Although the court clerk initially rejected the filing, the second amended complaint was deemed filed nunc pro tunc in a stipulated order entered in January 2012.

In January and February, respectively, the Melody defendants and Toyota filed separate answers to the second amended complaint. Both answers contained the arbitration-related affirmative defense mentioned above. The Melody defendants reiterated their intent to petition to compel arbitration in case management statements filed in January and March. At the March case management conference, a trial date was set for December 2012.

In May 2012, the Melody defendants and Toyota filed a joint motion for summary judgment or, in the alternative, petition to compel arbitration (motion/petition). As

---

[1] All defendants other than Toyota will hereafter be referred to collectively as the "Melody defendants."

2

grounds for summary judgment, the Melody defendants and Toyota argued Gloster had forfeited his right to litigate his claims by filing suit rather than commencing an arbitration, as required by his various employment agreements with Melody. In the event the court rejected this argument, the motion/petition sought an order compelling arbitration of Gloster's claims. Although not a party to Gloster's arbitration agreement, Toyota agreed to participate in any arbitration.

In support of their motion/petition, the Melody defendants and Toyota demonstrated that, in the course of his three-year employment with Melody, Gloster signed some nine separate agreements containing clauses requiring him to arbitrate disputes with Melody and related parties. A copy of each agreement was submitted to the court. The terms of the arbitration agreements relevant to this appeal were inconsistent. The earliest agreement, signed in 2006, stated that arbitration would be "under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act . . . , including [Code of Civil Procedure] section 1283.05 and all of the Act's other mandatory and permissive rights to discovery." However, that agreement also stated "any arbitration proceeding must move forward under the Federal Arbitration Act . . . even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2[, subdivision] (c)." Gloster signed four separate agreements containing arbitration clauses in February 2008, and three of the four contained different language on this topic. Two contained the same language quoted above; another was similar but omitted the language addressing Code of Civil Procedure section 1281.2; a fourth was much more succinct.[2] [3]

---

[2] All further statutory references are to the Code of Civil Procedure.

[3] This agreement stated that the arbitration "shall be governed by the Federal Arbitration Act, and carried out in conformity with the procedures of the California Arbitration Act," but it also noted that the arbitration would be governed by "a more

3

The most recent agreement, signed in 2010 (2010 agreement), deleted all references to California law, stating the arbitration "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures published by the American Arbitration Association (AAA)."[4]

The motion/petition also demonstrated that, prior to filing suit, Gloster's attorney had engaged in discussions with Melody. In the course of the discussions, Melody repeatedly informed Gloster's attorney that Gloster had agreed to arbitrate any dispute and threatened Gloster with a claim of waiver if he elected to file suit rather than commence an arbitration.

In opposition, Gloster argued the motion for summary judgment should be denied because the Melody defendants and Toyota had not demonstrated prejudice as a result of his failure to seek arbitration. As to the petition to compel, Gloster argued (1) the Melody defendants and Toyota had not demonstrated the agreement to arbitrate was valid; (2) the petition should be denied under section 1281.2, subdivision (c) because his claims against Toyota were not subject to the arbitration agreements; and (3) the Melody defendants had waived their right to arbitrate by delaying their petition to compel.[5]

In support of the claim of waiver, Gloster's counsel submitted a declaration detailing the activities that had occurred in the course of the litigation. The parties had sought from each other and stipulated to various extensions of time in connection with their obligations. Gloster had served lengthy discovery requests on the Melody defendants, and the Melody defendants had not only responded to some of them but also engaged in meet and confer activities and filed supplemental responses. As noted above,

comprehensive arbitration agreement." All three 2008 agreements referred to in the text contain more extensive arbitration clauses.

[4] As in 2008, another agreement in 2010 contained an abbreviated arbitration clause and referred to Gloster's execution of a "more comprehensive arbitration agreement."

[5] Gloster does not repeat here the first argument, which is without merit under existing law. (See *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218–219.)

Gloster had filed three versions of the complaint, and the parties had attended status conferences. It does not appear the Melody defendants served discovery or made any motion other than the motion/petition.

The trial court entered a tentative ruling, which it subsequently adopted as the ruling of the court, denying the motion/petition in its entirety. As to the summary judgment motion, the court held the Melody defendants and Toyota had failed to demonstrate that all of the claims in the second amended complaint were subject to an arbitration agreement, since Toyota was not a party. As to the petition to compel arbitration, the court found the Melody defendants "have waived their right to compel arbitration, and Plaintiff has been prejudiced due to the delay of over a year of litigation." In addition, the court found "a possibility of conflicting rulings subject to Code of Civil Procedure section 1281[.2]" because the claims against Toyota would have to be litigated. The court directed the clerk to prepare an appropriate written order, but the order executed by the court reflected only the ruling on the summary judgment motion, without mentioning the petition to compel arbitration.[6] The Melody defendants filed a notice of appeal purporting to appeal both rulings.

## II. DISCUSSION

### A. *The Motion for Summary Judgment*

Gloster argues, and we agree, that the trial court's order denying the motion for summary judgment is not appealable. We therefore dismiss the Melody defendants' appeal to the extent it seeks review of that denial.

An order denying a motion for summary judgment is not appealable. (*Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1256.) In support of their right to appeal the denial, the Melody defendants argue, "orders which have an

---

[6] Gloster argues the Melody defendants' notice of appeal was defective because it sought review of the denial of their petition to compel arbitration but referred only to the written order, without mentioning the minute order. In light of the text of the tentative decision, which directed the clerk to prepare a written order reflecting all of the court's rulings, we construe the court's written order to incorporate the portion of the minute order ruling on the petition to compel arbitration.

effect on the review of the denial or dismissal of a petition to compel arbitration are also reviewable on appeal," citing as authority only *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 655–656 (*Fit Franchising*). *Fit Franchising* states no such principle; instead, it permitted the appeal of an order denying a stay of litigation pending arbitration because, under the circumstances, that order was found to be "the functional equivalent of an order denying a petition to compel arbitration." (*Id.* at p. 655.)

No such circumstances exist here. The Melody defendants do not argue the order denying the motion for summary judgment was the "functional equivalent" of an order denying a petition to compel. On the contrary, the motion sought to avoid their obligation to arbitrate, and it was accompanied by an actual petition to compel. Contrary to the Melody defendants' claim, *Fit Franchising* does not suggest that orders not directly addressing the right to arbitrate may be appealed. The order denying summary judgment did not become appealable merely because summary judgment was sought as an alternative to arbitration.

**B. *The Petition to Compel***

**1. *Section 1281.2, subdivision (c)***

Section 1281.2, subdivision (c), first paragraph, authorizes the court to deny a petition to compel if "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."[7] If the facts are not in dispute, the determination of whether section 1281.2 is applicable to a particular arbitration agreement is an issue of

---

[7] If these conditions of section 1281.2, subdivision (c) are satisfied, "the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2, subd. (c), 4th par.)

6

statutory and contractual interpretation that we review de novo. (*Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263.)

The parties disagree about which arbitration agreement should govern the resolution of this issue, but we need not resolve the dispute because we find section 1281.2, subdivision (c) inapplicable to both versions.

The Melody defendants seek to apply the 2010 agreement, arguing that as the last agreement, it supersedes all earlier agreements. The 2010 agreement states any arbitration will be conducted "under the Federal Arbitration Act, in conformity with the procedures published by the American Arbitration Association (AAA)." Because the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA), contains no provision analogous to section 1281.2, subdivision (c), that subdivision cannot be applied to deny the enforcement of arbitration clauses governed by the FAA. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 386 (*Cronus*); *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 968.) Accordingly, to the extent the 2010 agreement applies, denial of the petition to compel under section 1281.2, subdivision (c) was error.

Gloster argues for application of one of the 2008 agreements.[8] In justifying the selection of this agreement, he notes the agreement contains an integration clause and requires that "any agreement contrary to the foregoing must be entered into, in writing, by the President of [Melody]." Because the 2010 agreement was not executed by the president, Gloster argues, it could not have modified the 2008 agreement.[9] Although it

---

[8] As noted above, Gloster executed four separate agreements containing arbitration agreements in 2008. The particular agreement identified by Gloster was submitted to the trial court as exhibit C to the declaration of a Sonic employee, Jayne Jennings, and is found at page 235 of the clerk's transcript (hereafter the 2008 agreement).

[9] We take Gloster's argument at face value, but it would not appear to justify selection of the 2008 agreement as the governing arbitration clause. The initial 2006 agreement contains exactly the same integration clause and requirement of execution of any "contrary" agreement by the president. Because neither the 2008 agreement selected by Gloster nor any other subsequent agreement is executed by the president, none of them would, under his reasoning, supersede the original 2006 agreement. Because, as

7

refers to the FAA, the arbitration provision in the 2008 agreement also permits the application of California procedural law.  Similar provisions have been held to authorize the application of section 1281.2, subdivision (c).  (E.g., *Cronus, supra*, 35 Cal.4th at p. 394.)  The 2008 agreement selected by Gloster, however, also states in bold type "any arbitration proceeding must move forward under the Federal Arbitration Act . . . even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration:  *thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2*[*, subdivision*] *(c).*"  (Italics added.)

An arbitration clause is governed by the same principles of interpretation as other agreements.  " 'The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract.  [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. [Citation.]  "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129.)

The parties could not have stated their intent that section 1281.2, subdivision (c) would not be applied to defeat enforcement of the arbitration clause in the 2008 agreement any more clearly.  We are required to give effect to that intent.  Gloster's brief does not even acknowledge this language, let alone provide a reason not to enforce it.

Because we find section 1281.2, subdivision (c) inapplicable to the agreements executed by Gloster, we need not consider whether there is a risk of conflicting rulings, as the trial court found.

---

pertinent to this issue, the language of the 2006 and 2008 agreements is identical, the choice between the two is of no import here.

## 2. *Waiver*

The law governing waiver of a contractual right to arbitrate was summarized in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*): "State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver [citation], waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*Id.* at p. 1195.)

"Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration. [Citations.] ' "In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. . . ." ' [Citation.] [¶] . . . 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes, supra,* 31 Cal.4th at pp. 1195–1196.)

"[W]hether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations." (*Hong v. CJ CGV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 249.) " ' "The moving party's mere participation in litigation is not enough [to support a finding of waiver]; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking

9

arbitration." [Citation.]' [Citations.] [¶] . . . [¶] . . . '[C]ourts will not find prejudice where the party opposing arbitration shows *only* that it incurred court costs and legal expenses.' [Citation.]" (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 451–452 (*Lewis*).) "Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*St. Agnes, supra*, 31 Cal.4th at p. 1204.)

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' " (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) Because the material facts are not disputed here, we apply de novo review. (*Pulli v. Pony Internat., LLC* (2012) 206 Cal.App.4th 1507, 1514.)

While we recognize the Melody defendants delayed for an extended period in taking affirmative steps to enforce their right to arbitrate, Gloster failed to carry his

"heavy burden" of demonstrating this delay was unreasonable and prejudicial.[10] (*St. Agnes, supra,* 31 Cal.4th at p. 1195.) Importantly, the Melody defendants consistently asserted their intention to arbitrate, insisting on the requirement of arbitration in communications with Gloster and his counsel even before the litigation was filed. They reflected that intent in pleading an appropriate affirmative defense and consistently asserted their intent to seek arbitration in a series of case management statements. Throughout the period of delay, there was no question the Melody defendants wanted to arbitrate; the only question was when they would get around to enforcing their right.

Under the circumstances present here, the delay alone was not sufficient to support a finding of waiver. Answering a complaint and participating in litigation, on their own, do not waive the right to arbitrate. (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1204 (*Hoover*).) Further, it was not unreasonable for the Melody defendants to defer a petition to compel while awaiting the results of the Toyota demurrer, since a dismissal of Toyota would have simplified the analysis of issues under section 1281.2, subdivision (c)—as subsequent events proved. The demurrer was not resolved until January 2012, when Gloster was permitted to file his second amended complaint. The Melody defendants filed their petition to compel four months later. In the meantime, they filed no motions or discovery requests of their own, restricting their litigation activity to responding to Gloster's requests and attending case management conferences. Ordinarily, a delay is found unreasonable only when it is combined with the attempt by the party asserting a right to arbitrate to obtain an advantageous litigation position during the delay. (See, e.g., *Hoover*, at pp. 1204–1205 [defendant conducted discovery, removed case twice to federal court, and filed demurrer during delay]; *Lewis, supra,* 205 Cal.App.4th at pp. 440–441, 446 [defendant filed succession of demurrers and motions to strike before asserting right to arbitrate]; *Roberts v. El Cajon Motors, Inc.*

---

[10] The Melody defendants argue for the first time on appeal that, under the 2010 agreement, the issue of waiver should be decided by the arbitrator. Because of the uncertainty over the applicable arbitration agreement, we will decide the issue, as urged by Gloster.

11

(2011) 200 Cal.App.4th 832, 847 [defendant engaged in class discovery and contacted absent class members during delay].)

Other than the delay, which, as noted above, was at least partially justified by Gloster's joinder of Toyota, the Melody defendants' only conduct arguably inconsistent with an intent to arbitrate was their filing of a motion for summary judgment with their petition to compel. While the filing of a dispositive motion has been found to contribute to waiver, such a motion ordinarily must involve "the merits of arbitrable issues." (*Lewis, supra,* 205 Cal.App.4th at p. 450.) In contrast, the Melody defendants' summary judgment motion raised only the procedural issue of Gloster's waiver and did not otherwise address the merits of his claims. Further, it was combined with an alternative motion to compel. Given these circumstances, the summary judgment motion could not be construed as inconsistent with an intent to arbitrate.

In addition, Gloster failed to show any cognizable prejudice from the Melody defendants' delay. As noted above, a party is not prejudiced for this purpose solely because it has incurred expenses as a result of its participation in litigation. (*Lewis, supra,* 205 Cal.App.4th at pp. 452–453.) Rather, the party must show it " 'has been substantially deprived of the advantages of arbitration as a " ' "speedy and relatively inexpensive" ' " means of dispute resolution.' " (*Id.* at p. 452.) Gloster's claim of prejudice was based on the legal expenses he incurred, which were largely the result of his own efforts at discovery and his response to the Toyota demurrer, and the increased anxiety he suffered as a result of the litigation. In the absence of a demonstration that the discovery would not be useful to Gloster in pursuing his claims in arbitration, its expense did not constitute prejudice. Expenses incurred in connection with Toyota's activities cannot be attributed to the Melody defendants, since Toyota was a third party to the arbitration. We are unaware of any decision holding that anxiety constitutes prejudice for these purposes.

## C. *Toyota*

The Melody defendants contend the trial court should have found Toyota to be a party to the arbitration agreement or should have left the issue to the arbitrator. We

12

address this issue briefly because it may arise again in connection with the trial court's entry of an order granting the petition to compel. We find no basis for requiring Gloster, over his objection, to arbitrate with Toyota.

We find no merit in the Melody defendants' contention Toyota should be deemed a third party beneficiary of the arbitration agreement merely because it was labeled an "agent" of the other defendants in boilerplate allegations of the complaint. The issue is resolved conclusively in *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, which holds that a third party cannot be deemed an "agent" under an arbitration agreement solely on the basis of boilerplate allegations, particularly when the party advocating that status denies the truth of the allegation. (*Id.* at pp. 451, 453.) As the Melody defendants' brief makes clear, they do not concede Toyota was, in fact, their agent, and they submitted no evidence to the trial court of Toyota's status as an agent.

Neither of the cases cited by the Melody defendants to support their argument hold that a party can voluntarily join a contractual arbitration *over the objection of the opposing party*. (See *Kustom Kraft Homes v. Leivenstein* (1971) 14 Cal.App.3d 805, 809; *Unimart v. Superior Court* (1969) 1 Cal.App.3d 1039, 1049.) Arbitration is a right arising out of contract, and Toyota has no contractual right to arbitrate here. While there seems little doubt Gloster could *consent* to Toyota's joinder in the arbitration, there is no legal basis for compelling him to arbitrate with Toyota in the absence of his contractual commitment to do so.

Nor do we find any merit in the Melody defendants' claim that the issue must be resolved by the arbitrator. In the sole case they cite for support, *Zakarian v. Bekov* (2002) 98 Cal.App.4th 316, the arbitration agreement contained a clause stating, " 'I also hereby consent to the intervention or joinder in the arbitration proceeding of all parties relevant to a full and complete settlement of any dispute arbitrated under this Agreement, as set forth in the Medical Arbitration Rules and/or CHA-CMA Rules for the Arbitration of Hospital and Medical Fee Disputes.' " (*Id.* at p. 320, fn. omitted.) There is no similar language consenting to the participation of essential nonparties in the nine arbitration agreements signed by Gloster. Accordingly, there is nothing for the arbitrator to decide.

13

## III.  DISPOSITION

The Melody defendants' appeal is dismissed to the extent it seeks review of the trial court's denial of their summary judgment motion.  The trial court's order denying the petition to compel arbitration is reversed.  The matter is remanded to the trial court for entry of an appropriate order directing arbitration between Gloster and the Melody defendants.

_____

Margulies, Acting P.J.

We concur:

_____

Dondero, J.

_____

Banke, J.

Filed 5/21/14

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SEAN GLOSTER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SONIC AUTOMOTIVE, INC., et al.,<br><br>        Defendants and Appellants. | A137081<br><br> (San Mateo County<br> Super. Ct. No. CIV505781)<br><br>ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

        The opinion in the above-entitled matter filed on April 23, 2014, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered pursuant to rule 8.1110 that the opinion should be published in the Official Reports, with the exception of part II.C.

Dated:

_____

Margulies, J.

Trial Court:  San Mateo County Superior Court

Trial Judge:  Hon. Joseph E. Bergeron

Counsel:

Morgan, Lewis & Bockius, L. Julius M. Turman, Philip J. Smith; Fine, Boggs & Perkins, John P. Boggs, Davis A. Hosilyk and Ian G. Robertson, for Defendants and Appellants.

Law Offices of David S. Seacrest, David S. Seacrest, for Plaintiff and Respondent.