Filed 8/23/24  Reyes v. Point Loma Rehabilitation Center CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAVIER REYES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>POINT LOMA REHABILITATION CENTER, LLC,<br><br>  Defendant and Appellant. | D082714<br><br><br><br>(Super. Ct. No. 37-2021-00047620-CU-OE-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Musick, Peeler & Garrett, Cheryl A. Orr; Fisher & Phillips and Grace Y. Horoupian for Defendant and Appellant.

Singleton Schreiber, Benjamin I. Siminou, Jonna D. Lothyan; Gruenberg Law, Joshua D. Gruenberg, Pamela Vallero and Catharine McGlynn for Plaintiff and Respondent.

Fifteen months after plaintiff Javier Reyes filed suit against his employer, Point Loma Rehabilitation Center, LLC (the Center), and one month before the scheduled trial date, the Center moved to compel arbitration. Prior to that, the Center filed a case management statement and attended a case management conference; in neither instance did it indicate any intent or desire to arbitrate the dispute. Instead, it requested a trial, agreed to motion and discovery deadlines, propounded written discovery, and indicated it planned to file a motion for summary judgment. In short, for months it demonstrated an unequivocal intent to litigate the controversy with Reyes. Only belatedly did it begin to assert a desire to arbitrate the matter.

The trial court denied the motion to compel arbitration, applying the rule announced in the United States Supreme Court's decision *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, pp. 413–414 (*Morgan*) that courts employing the Federal Arbitration Act (FAA) may not condition waiver of the right to arbitration on a finding of prejudice to the party opposing the motion to compel. Under the facts, the court concluded that the Center waived its right to arbitrate by unreasonably delaying its arbitration demand and by acting inconsistently with an intent to arbitrate. On appeal, the Center's briefs argued that (1) California procedural law applies and the court erred by finding waiver in the absence of any evidence of prejudice to Reyes and (2) even if prejudice is not required, the court erred by finding waiver.

Since the trial court's decision and the completion of briefing here, the California Supreme Court issued its decision in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*), relying on *Morgan* and holding that prejudice is not required to establish waiver of the right to

2

arbitration under the California Arbitration Act (CAA).  Finding waiver based on the principles articulated in *Quach*, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Center is a skilled nursing facility that hired Reyes as a Certified Nursing Assistant in September 2019.  The following month, Reyes executed a Mutual Agreement to Arbitrate (the Agreement), which applied to all disputes with the Center including employment related disputes.  The Agreement provided that the FAA "shall govern the interpretation and enforcement of this Agreement and the arbitration proceedings," and that the arbitration would "be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures," including those governing discovery.

On November 9, 2021, Reyes filed a complaint against the Center alleging causes of action for retaliation (Labor Code, § 1102.5), disability or medical condition discrimination (Govt. Code, § 12940, subd. (a)), negligent supervision, and intentional infliction of emotional distress.  The Center filed an answer, which included an affirmative defense that all of Reyes's claims were subject to binding arbitration.

In April 2022, the Center served written discovery requests on Reyes and noticed his deposition.  A few days later, the Center filed a case management statement (CMS) in advance of a case management conference. The CMS included (1) a request for a nonjury trial; (2) a statement that "[t]his case will be ready for trial within 12 months of the date of the filing of the complaint"; (3) a list of many dates on which the Center or its attorneys would not be available for trial; and (4) an estimate that the trial would last three days.  In the section for alternative dispute resolution, the Center checked the box indicating that it was willing to participate in mediation but left blank the box for arbitration and failed to otherwise note any intention to

3

arbitrate the dispute.  Finally, the Center wrote that it expected to file a motion for summary judgment/adjudication before trial.  At the case management conference on April 22, 2022, the court set a February 24, 2023 deadline for motions and discovery and scheduled a jury trial for March 17, 2023.  The court's order indicated that the anticipated motion for summary judgment would be heard "pursuant to code."

In May, when it failed to receive timely responses to its discovery requests, the Center sent the first of two e-mail notices advising Reyes that the responses were late.  A second e-mail in June impliedly threatened to file a motion to compel if it did not receive responses within the week.  Finally, on July 6, 2022, Reyes responded to the interrogatories and request for production.

Shortly before Reyes provided those discovery responses, counsel for the Center sent a meet-and-confer letter to Reyes attaching the Agreement, asserting that his claims were subject to the Agreement and requesting a stipulation to arbitrate, but noting it would prefer to resolve the matter informally prior to initiating arbitration.  Center's counsel followed up by e-mail on July 10 and July 22, noting the agreement to arbitrate and requesting an opening settlement demand.  In another e-mail on August 3, the Center provided formal notice of its intention to preserve arbitration pending informal negotiations or mediation.

In September, the Center's counsel informed Reyes it wished to move forward with arbitration, setting a September 21 date for Reyes's response as to whether he would be willing to stipulate to arbitration.  A month and a half later, counsel for the Center asked for an update regarding the request for stipulation.  Reyes's counsel responded on November 7, stating,

4

"We will stipulate to arbitration," and requesting a list of potential arbitrators. The parties scheduled arbitration for February 27, 2023.

In response to Reyes's request, counsel for the Center provided a list of arbitrators on November 21, 2022. Not until January 19, 2023, however, did the Center's counsel circulate a proposed stipulation. One week later, Reyes informed the Center he would no longer agree to the stipulation and likewise did not wish to participate in mediation. Consequently, on February 14, 2023, the Center filed a motion to compel arbitration (the Motion) seeking to enforce the Agreement.[1]

The Motion acknowledged that the FAA (9 U.S.C. § 1 et seq.) applied based on the Center conducting business in interstate commerce, although it did not reference the Agreement's explicit choice of the FAA. At the same time, the Motion also cited the CAA, noting that "the Agreement expressly incorporates the CAA to the extent applicable."[2] Reyes opposed the Motion, arguing that (1) the Center waived any right to arbitrate by delaying and

---

[1] In the Motion, the Center detailed its arbitration agreement procedure:

> "Defendant also conducts employee personnel file audits at least once a year. (Berch Decl., ¶ 4.) These audits require that Director of Staff Development examine each employee personnel file to confirm all employee documents have been signed by the employee, including an arbitration agreement. (*Ibid.*) If, for example, an arbitration agreement is missing from the employee personnel file, the employee is asked to meet with the Director of Staff Development. (*Ibid.*) At that time, the employee is then asked to read and review the arbitration agreement."

[2] Despite this statement in the moving papers, we have been unable to locate any such reference to the CAA (Code Civ. Proc., § 1280 et seq.) in the Agreement.

engaging in litigation, and (2) the Agreement was procedurally and substantively unconscionable.

After denying the Center's ex parte application to advance the hearing date on the Motion, the court vacated the March trial date, eventually hearing the Motion on June 9, 2023. At the hearing, counsel for the Center explained:

> "The first time our office learned about the arbitration agreement was on May 19th [2022] and we were -- and the reason we didn't know about it from the inception of the case is, although the client said it was their practice to have arbitration agreements signed by employees, we didn't see one in the personnel file. [¶] We asked that a search of arbitration agreements be done because we know from experience from time to time arbitration agreements are kept in a separate file or something to that effect. We found out about the arbitration agreement on May 19, 2022."

The court denied the motion to compel arbitration, concluding the Center waived its right to arbitrate the dispute with Reyes. According to the court, the parties agreed that the FAA governs the Agreement and thus prejudice was not required to establish waiver. Waiver occurred, the court reasoned, because the Center unreasonably delayed in bringing its motion to compel, failing to take "affirmative steps *in court* to implement the process" and instead proceeding as though the matter would be litigated in a judicial forum.

## DISCUSSION

### A. *The Evolution of Law on Waiver of the Right to Arbitrate*

Under the CAA, where they have validly agreed to do so, a court must order the parties to arbitrate their dispute except under limited circumstances. (Code Civ. Proc., § 1281.2.) One such exception occurs when

6

the party moving to compel arbitration has waived its right to arbitrate. (*Id.,* subd. (a).)

Until the California Supreme Court's recent decision in *Quach*, whether a party had waived its right to arbitrate under the CAA was governed by a list of factors identified by the high court in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*). " 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced' the opposing party." ' "[3] (*St. Agnes,* at p. 1196.) These waiver factors derived from the federal Tenth Circuit Court of Appeals decision in *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468.

At the time, the *St. Agnes* court explained, "the federal and state rules applicable in this case are very similar." (*St. Agnes, supra*, 31 Cal.4th at p. 1194.) Under both schemes, waivers were "not to be lightly inferred,"

---

[3]     By referencing "waiver," the court referred to the loss of a contractual right to arbitration either through "the voluntary relinquishment of a known right" or "as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right." (*St. Agnes, supra*, 31 Cal.4th at p. 1195, fn. 4.)

and the party opposing arbitration bore "a heavy burden." (*Id.* at p. 1195.) And whether the opposing party suffered prejudice was likewise part of the analysis in most federal circuits. (*Id.* at p. 1203, fn. 6; see also *Morgan, supra*, 596 U.S. at pp. 413–414.)

In *Morgan*, however, the United States Supreme Court announced a rule prohibiting federal courts from requiring prejudice as a condition for finding waiver of the right to arbitration. (*Morgan, supra*, 596 U.S. at pp. 418–419.) Waiver under the FAA derives from title 9 of the United States Code section 3, which requires the court to order a stay in the proceedings pending arbitration under an agreement unless the moving party is "in default in proceeding with such arbitration." The Eighth Circuit test for waiver under review in *Morgan* provided that "a party waive[d] its right to arbitration if it knew of the right; 'acted inconsistently with that right'; and . . . 'prejudiced the other party by its inconsistent actions.' " (*Morgan,* at p. 415.)

In eliminating the prejudice requirement, the Court reasoned that the FAA, by its terms, does not permit such "arbitration-specific procedural rules": "Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration— 'shall be made and heard in the manner provided by law for the making and hearing of motions.' " (*Morgan, supra*, 596 U.S. at p. 412.) And the Court clarified that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." (*Id.* at p. 418.) As to contracts generally, "whether a waiver has occurred" depends "on the actions of the person who held the right" not on "the effects of those actions on the opposing party." (*Id.* at p. 417.) Thus, waiver of the right to arbitrate occurs when a

8

party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right[.]" (*Id.* at p. 419.)

The California Supreme Court has now followed suit, eliminating prejudice from the waiver analysis. (*Quach, supra*, 16 Cal.5th at p. 583.) *Quach* explains that the California "arbitration-specific prejudice rule is based on the federal appellate authority that *Morgan* disapproved" and that the CAA contains "language similar to section 2 of the FAA, that an arbitration agreement is 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" (*Quach*, at p. 578.) Thus, the CAA "similarly should be interpreted to require a court to 'hold a party to its arbitration contract just as the court would to any other kind,' not to authorize a court to 'devise novel rules to favor arbitration over litigation.'" (*Ibid.*, citing *Morgan, supra*, 596 U.S. at p. 418.)

The *Quach* court then outlined the requirements for waiver under California law, which it viewed as largely consistent with federal law.[4]

---

4      Any dispute over whether the CAA's procedural rules or the FAA's procedural rules apply to the question of waiver of the right to arbitrate is no longer relevant. By adopting the *Morgan* rule, the California Supreme Court sought "to avoid the sometimes tricky choice of law and preemption questions involved in determining which statute governs proceedings to enforce an arbitration agreement" and to avoid "uncertainty and confusion" of different rules. (*Quach, supra*, 16 Cal.5th at p. 582.)

The Ninth Circuit, for example, has described the test for waiver of the right to arbitrate as requiring that "the party asserting waiver . . . . demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." (*Armstrong v. Michaels Stores, Inc.* (9th Cir. 2023) 59 F.4th 1011, 1015 (*Armstrong*).) Whether the party acted inconsistently with the right to arbitrate does not involve a " 'concrete test,' " but rather an examination of " 'the totality of the parties' actions' " to determine "whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate.' "

9

"To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it. [Citations.] Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true. [Citation.] The waiving party's knowledge of the right may be 'actual or constructive.' [Citation.] Its intentional relinquishment or abandonment of the right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable factfinder to conclude that the party had abandoned it. [Citation.] [¶] The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is relevant." (*Quach*, *supra*, 16 Cal.5th at pp. 584–585, fn. omitted.) Specifically, waiver does not require "that the party opposing enforcement of the contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct."[5] (*Quach*, at p. 585.)

---

(*Ibid.*, citing *Hill v. Xerox Business Services, LLC* (9th Cir. 2023) 59 F.4th 457, 471 (*Hill*).) To establish waiver, the party need not have made "express denials of the right to arbitrate"; rather " 'extended silence' and 'much-delayed demand for arbitration,' . . . reveal[ ] an express eschewal of the party's arbitration right." (*Hill* at pp. 471–472.)

[5] *Quach* observes that a court "should separately evaluate each generally applicable state contract law defense raised by the party opposing arbitration" and "should not lump distinct legal defenses into a catch-all category called 'waiver.' " Noting that some of the factors identified in *St. Agnes* "are relevant to other defenses, such as forfeiture, estoppel, laches or timeliness, but not to waiver," the Supreme Court cautioned that courts

10

**B.** *The Trial Court Properly Found that the Center Waived its Right to Arbitrate*

"When a trial court has applied the clear and convincing evidence burden of proof required by the generally applicable law of waiver and made factual findings in support of a waiver determination, the question on review is 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.'" (*Quach, supra*, 16 Cal.5th at p. 585, fn. 6.)[6]  In *Quach*, however, where the lower court "did not apply the generally applicable law of waiver," but did require " ' "a heavy burden of proof," ' " the Supreme Court "review[ed] de novo the undisputed record of the trial court proceedings" without "decid[ing] whether the trial court applied a burden of proof equivalent to the clear and convincing evidence burden of proof." (*Id.* at p. 585 & fn. 6.)  The court concluded that "even under a more stringent de novo standard of review, . . . Quach has established by clear and convincing evidence that Commerce Club waived its right to compel arbitration." (*Id.* at p. 585, fn. 6.)

---

"should not apply the *St. Agnes* factors as a single multifactor test for determining whether the right to compel arbitration has been lost through litigation.  [Citations.]  Instead, a court should be careful to consider only those factors that are relevant to the specific state-law defense the party resisting arbitration has raised." (*Quach, supra*, 16 Cal.5th at p. 584.)

[6]     The federal standard of review for waiver—clear error review of factual findings and de novo review of the ultimate question of waiver—does not "materially differ for our purposes":  "[u]nder either the federal or state standard, therefore, we defer to the trial court's factual findings but independently review issues of law." (*Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522, 1536.)

11

The trial court in our case determined that the Center waived its right to arbitrate the dispute with Reyes and did not require any showing of prejudice. Although the court made specific factual findings that the Center unreasonably delayed in bringing its motion to compel arbitration and proceeded to litigate the case in a manner inconsistent with an intent to arbitrate, the record of *how* it reached this conclusion is at best ambiguous as to the applicable burden of proof.[7] Even so, as in *Quach*, we can review de novo "the undisputed record of the trial court proceedings" to determine if it provides sufficient evidence to make it "highly probable" that the Center waived its right to insist on arbitration. (*Quach, supra,* 16 Cal.5th at pp. 585–586.)

First, the record establishes by clear and convincing evidence that the Center knew of its right to arbitrate from the outset of the case. The Center asserted arbitration as an affirmative defense. (*Quach, supra,* 16 Cal.5th at p. 586 ["And in its answer to Quach's complaint, Commerce Club asserted that Quach's arbitration agreement barred his suit and that he should be compelled to arbitrate."]; *Hill, supra,* 59 F.4th at p. 470; *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 968 (*Davis*) ["Shiekh presumably was aware of its right to arbitrate when it asserted the parties' arbitration agreement as an affirmative defense in its answer to the complaint."].) That the Center's *counsel* may not have received a copy of the executed Agreement until May 2022 is largely irrelevant. The *Center* knew that it provided arbitration agreements to its employees and even detailed its audit

_____

[7] On one hand, as in *Quach*, the trial court noted that "the party seeking to demonstrate waiver bears a heavy burden of proof." At the same time, however, it also noted as a generally applicable standard that the party opposing arbitration bears the burden of proving any defense . . . by a preponderance of the evidence."

12

system used to ensure each employee had signed an agreement. (See *Quach*, at p. 586 ["In a declaration Commerce Club submitted in support of its motion to compel arbitration, its director of human resources attested that in 2015 — during Quach's employment — Commerce Club required all employees to sign form agreements providing for binding arbitration of employment-related disputes."].) Moreover, the Center undoubtedly shared this information with its counsel, even if it did not provide them with a copy of the agreement, because arbitration was pleaded as an affirmative defense in the answer filed in January 2022.

Second, as in *Quach*, the record here contains undisputed clear and convincing evidence that the Center's "words and conduct [were] markedly inconsistent with an intent to arbitrate" because it (1) knew of the right to arbitrate but "chose not to do so for" 15 months, (2) "affirmatively indicated its intent to pursue a jury trial rather than arbitration," and (3) "actively engaged in discovery." (See *Quach, supra*, 16 Cal.5th at p. 587.)

The Center's 15-month delay in filing the Motion was two months longer than that in *Quach*. Moreover, the Motion was filed just shortly before the original trial date. The Center seeks to entirely excuse the period between the November 9, 2021 complaint and May 19, 2022, when it provided Reyes's executed Agreement to its attorneys. As we have already explained, however, the record does not support a conclusion that either the Center or its lawyers were ignorant of the basis for arbitration. Next, defense counsel elected to demand delayed discovery responses from Reyes and threaten a motion to compel on June 17, 2022 despite having admittedly received a signed copy of the Agreement a month earlier. Finally, after failing to engage Reyes in informal negotiations, the Center sent the September 14, 2022 e-mail, providing a September 21 deadline for Reyes to stipulate to arbitration.

13

That deadline came and went without the Center filing a motion to compel. In fact, the Center apparently waited until November to follow up, at which point Reyes's counsel stated he would agree to arbitrate. The Center then waited another two months—until January 19, 2023—to provide a written agreement to Reyes for his signature.[8]

Even after asserting the right to arbitrate as an affirmative defense, the Center expressly indicated its intent to pursue a jury trial and failed to mention arbitration in the case management statement and at the case management conference. In the statement, the Center requested a trial, provided a time when it would be prepared for trial, estimated the length of the trial, provided dates for which it was unavailable for trial, wrote that it intended to move for summary judgment, and marked mediation as the only potential form of alternative dispute resolution. At the hearing, the court set deadlines for motions, discovery, and expert exchanges, scheduled a jury trial, and noted the Center's expected motion for summary judgment. All the while the Center's counsel remained mute as to the possibility of arbitration. Indeed, although the Center mentioned arbitration to Reyes in June, it did not advise the court until the February 14, 2023 Motion. (See *Davis, supra*, 84 Cal.App.5th at p. 968, fn. 7 ["Although Shiekh claims it had told Davis of its intent to arbitrate in August 2020, that representation was not placed on the record, and thus not made known to the court, until it filed the motion in October 2020. 'In [a party's] pre-trial huffery and puffery[,] [it] may float all sorts of intentions, serious or not,' but a court deciding waiver 'is properly concerned only with intentions placed upon the record.' "].)

---

[8] We can accept that once Reyes's counsel tentatively agreed to arbitrate, the two-month delay in preparing a proposed stipulation, especially during the holiday season, was not unreasonable. Accordingly, we disregard that period in our analysis.

14

Finally, the Center's use of discovery after the court set discovery deadlines was inconsistent with seeking to arbitrate, even if it could have engaged in discovery during arbitration. This is especially true of the Center's expressed intention to utilize the judicial forum to litigate a motion to compel discovery responses if Reyes did not comply with its demands. The Center's counsel communicated this intent on June 17, 2022, nearly one month after receiving the Agreement executed by Reyes. The Center's use of discovery weighs in favor of finding waiver despite any assertions "that the discovery it conducted was 'minimal,' [and] that it did not gain information about his case that it could not have gotten in arbitration." (*Quach, supra*, 16 Cal.5th at p. 587.)

The Center contends that the totality of the circumstances does not support waiver because it (1) asserted arbitration as an affirmative defense in its answer, (2) presented the Agreement to Reyes in June 2022 and stated it had the right to arbitration, and (3) did not engage in any merits-based litigation. As demonstrated in *Quach*, the assertion of arbitration as an affirmative defense is not in itself sufficient to preserve the right to arbitrate, nor does the absence of merits-based litigation prevent a waiver finding. (*Quach, supra*, 16 Cal.5th at pp. 586–587 [finding waiver even though "Commerce Club asserted in its answer that Quach should be compelled to arbitrate" and "Quach has not litigated the merits of his claims"]; *Davis, supra*, 84 Cal.App.5th at p. 971 [the absence of a "motion on the merits may be one factor in determining waiver," but it is not required].) Further, " ' "[m]ere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the

15

dispute." ' " (*Leger v. R.A.C. Rolling Hills LP* (2022) 84 Cal.App.5th 240, 246.)

These actions and circumstances were unlike those of the moving party in *Armstrong*,[9] which "explicitly and repeatedly stated its intent to move to compel arbitration in both case management statements and in the initial case management conference before the district court." (*Armstrong, supra*, 59 F.4th at p. 1015; accord *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 449 [defendants "consistently asserted their intent to seek arbitration in a series of case management statements"].) Having failed to assert the right to arbitration in the CMS or at the subsequent conference, we cannot say the Center was "consistently vocal about its intent to move to compel arbitration." (*Armstrong* at p. 1015; see also *Davis, supra*, 84 Cal.App.5th at pp. 969–970.)

Considering the Center's representations and participation in case management with the court, taking discovery outside of arbitration with a threat of enforcement by motion, and waiting to file the Motion until shortly before the original trial date, we conclude there is clear and convincing evidence to show that the Center waived its right to arbitration.

---

[9] Moreover, "the fact that the specific circumstances in this case are not mirrored" in other cases cited by the Center "does not mean that this case is devoid of sufficient evidence to support waiver" because we must "examine each case in context." (*Davis, supra,* 84 Cal.App.5th at pp. 971–972.)

16

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Reyes shall recover costs on appeal.

DATO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.