Filed 7/21/14  Lawyers Title Wage and Hour Cases CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LAWYERS TITLE WAGE AND HOUR CASES.<br><br>_____<br><br>BRUCE HAY et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>LANDAMERICA FINANCIAL GROUP et al.,<br><br>    Defendants and Respondents. | B248633<br><br>(JCCP004676; Los Angeles County Super. Ct. Nos. BC381693 & BC382210; Orange County Super. Ct. No. 3020100418901) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Wagner, Jones, Kopfman & Artenian, Nicholas J.P. Wagner, Andrew P. Jones, Daniel M. Kopfman, Lawrence M. Artenian and Paul C. Mullen, for Plaintiffs and Appellants, Bruce Hay, Diane Hammer, Anita Walach and Melissa Werner.

Littler Mendelson, Curtis A. Graham, Michelle L. Christian, for Defendants and Respondents, Lawyers Title Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company and Commonwealth Land Title Company.

Bruce Hay, Diane Hammer, Anita Walach and Wanda "Melissa" Werner (collectively Hay/Hammer parties) appeal from the judgment entered after the trial court granted the motions for summary judgment filed by Lawyers Title Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company and Commonwealth Land Title Company (collectively Lawyers Title), ruling the Hay/Hammer parties' wage and hour claims were barred by written severance and release agreements they had signed. The Hay/Hammer parties also appeal from the order denying their motion for class certification because there were no class representatives following the grant of summary judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties*

Hay, Hammer, Walach and Werner are all former employees of LandAmerica Financial Group, Inc. or one of its affiliates or subsidiaries. Hay worked as an escrow officer; Hammer, Walach and Werner as title officers. Hay's employment terminated on August 1, 2007; Hammer's on September 4, 2007; Walach's on November 2, 2007; and Werner's on November 30, 2006. Each of them signed a severance agreement and release upon termination of employment that provided severance benefits (in addition to their final paycheck for work performed) in an amount based on longevity of service. The severance payments for these four individuals ranged from approximately $3,000 to more than $21,000.

LandAmerica Financial Group, at one point one of the three largest title insurance groups in the United States, filed for Chapter 11 bankruptcy protection in November 2008. The following month LandAmerica Financial Group's subsidiaries Lawyers Title Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company and Commonwealth Land Title Company—the respondents here—were acquired by Fidelity National Financial, Inc. directly and through its underwriting subsidiaries.

2

2. *The Class Actions*

Hammer, Walach and Werner were among the named plaintiffs who filed a wage and hour class action against LandAmerica Financial Group and affiliated entities on December 3, 2007 on behalf of themselves and all similarly situated title officers (known by the court and the parties as the *Chaffin* action). On December 12, 2007 Hay and others filed a wage and hour class action against the same defendants on behalf of themselves and all similarly situated escrow officers (known as the *Hay* action). A third class action (the *Postema* action) alleging substantially similar claims as the *Chaffin* and *Hay* actions was filed in October 2010. The three lawsuits alleged causes of action for failure to pay wages due for work in excess of eight hours in one work day or in excess of 40 hours in one work week; failure to pay wages due for work performed over prescribed periods without the statutorily required meal breaks; failure to provide itemized earnings statements; and unfair competition under Business and Professions Code section 17200 based on Labor Code violations.

All three actions were deemed related and coordinated in the Los Angeles Superior Court before Judge Elihu M. Berle. Ultimately, as a result of the bankruptcy of LandAmerica Financial Group, the various Lawyers Title entities became defendants in the coordinated class actions.

Settlement agreements were negotiated and approved in the *Chaffin* and *Hay* actions in the first half of 2012.[1] Each agreement, in identical language, excluded from the settlement class individuals who had signed a severance agreement: "Any person who previously settled or released the claims covered by this settlement shall not be a member of the plaintiff Class. Any person who signed a severance agreement with any of Defendants following employment in a position within the above class description during any part of the Class Period shall not be a member of the plaintiff Class." Because

---

[1] Because of the overlap in class definitions the two agreements included all named plaintiffs and settlement class members in the *Postema* action.

3

the Hay/Hammer parties had signed severance agreements on termination of their employment, they were expressly excluded from the settlement class.

3. *The Motions for Class Certification and for Summary Judgment*

On August 30, 2012 the Hay/Hammer parties moved to certify a severance agreement class in the coordinated cases, consisting of the individual escrow officers and title officers who had signed severance agreements on termination of their employment and, therefore, had been excluded from the *Chaffin* and *Hay* settlements. While that motion was pending, Lawyers Title separately moved for summary judgment or, in the alternative, summary adjudication against each of the Hay/Hammer parties on the ground the claims asserted were barred as a matter of contract law by the general release language in the severance agreements each of them had signed. The substantively identical motions also asserted, contrary to the Hay/Hammer parties' contention, the severance agreements and releases were not void under Labor Code section 206.5, which prohibits an employer from conditioning payment of wages due upon execution of a release of claims.[2]

The Lawyers Title motions established that each of the Hay/Hammer parties had agreed to the same, apparently complete release in paragraph 3 of the severance agreement: "Employee agrees to release the Company, any related companies, and the employees and directors of any of them from all claims or demands Employee may have based on Employee's employment with the Company or the termination of that employment. . . . This release covers both claims that Employee knows about and those about which Employee may not know. [¶] This release does not include, however, a release of Employee's right, if any, to payments from the retirement plan, 401(k), or similar ERISA benefits under the Company's standard retirement program and the right

---

[2] Lawyers Title also argued the severance agreements and releases were not preempted or otherwise made unenforceable by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

to continuation in Company medical plans as provided by the Consolidated Omnibus Budget Reconciliation Act of 1986 [(COBRA)]."

Paragraph 5 of each severance agreement explained, "The Company makes this Agreement to aid Employee in making the Employee's transition from the Company, to protect the Company from unfair competition and to avoid the cost of defending against any possible lawsuit." Immediately above the signature block, in all capital letters, the documents state, "Please read this agreement carefully. It contains a release of all known and unknown claims." Lawyers Title argued the plain language of the release in the severance agreements included the wage and hour claims at issue in the consolidated proceedings.

In their oppositions to the motions for summary judgment, the Hay/Hammer parties argued the severance agreements were reasonably susceptible to an interpretation that, notwithstanding the general release language, preserved the wage and hour claims asserted in the consolidated actions. In support they emphasized language in the first paragraph of the agreements, which described the terms and amount of the severance benefits provided: ". . . Employee further understands that the Severance Benefit is all the Employee is entitled to receive from the Company except for payments from ERISA retirement benefits to which Employee may be entitled under the Company's standard retirement program. Employee will receive no further wage, vacation, incentive, bonus, or other similar payments from the Company, *other than wages accrued through the date of termination* and any vacation pay due under the Company's normal policies and procedures." (Italics added.) The recovery sought in the lawsuits, they insisted, was for "wages accrued through the date of termination"; and a jury should be allowed to decide which of the two reasonable interpretations of the release language, when read in the context of the entire agreement, was correct.

4. *The Trial Court's Orders Granting Summary Judgment and Denying Class Certification*

At the initial hearing on the summary judgment and class certification motions on January 16, 2013, the court requested additional briefing on the application of the parol

5

evidence rule and the existence of any extrinsic evidence that might raise a triable issue of material fact regarding the proper interpretation of the relevant contract language: "I'm giving you an opportunity to present any additional evidence, and if you say you have no evidence and the Plaintiff doesn't have evidence, then we'll look at it and interpret the agreement. If there is evidence in terms of the draftsman of the parties, then we're going to take a look at it and give Plaintiff an opportunity to present any evidence plaintiff may have with regard to any discussions about accrual."

The Hay/Hammer parties filed supplemental briefs. In addition to addressing the law regarding application of the parol evidence rule, their briefs set forth the following facts to aid in the interpretation of the purportedly ambiguous terms of the severance agreement:

- The severance agreement was signed at or near termination of their employment.
- The Hay/Hammer parties had each worked on many occasions more than 40 hours in a week and/or more than eight hours in a day with the knowledge of their managers and supervisors and had often worked without an off-duty meal period with their employer's knowledge.
- They were not compensated for overtime hours.
- Their employer was aware of its obligation to pay overtime wages because it had previously reclassified the Hay/Hammer parties from exempt to nonexempt without any change in job duties.
- The language of the severance agreement does not purport to provide the severance payment in lieu of unpaid wages but rather acknowledges that wages due are unaffected by the agreement.
- Following execution of the severance agreement, the Hay/Hammer parties were, in fact, given a wage payment for services rendered separate from the consideration paid under the severance agreement.

No evidence was proffered regarding any discussions between the terminated employee and his or her employer with respect to the definition of the term "wages accrued through the date of termination" or the scope of the general release or concerning other circumstances surrounding the execution of the severance agreement.

In its supplemental reply memoranda Lawyers Title argued there was no conflicting extrinsic evidence to be heard and resolved by a trier of fact, which would necessarily defeat summary judgment. To the contrary, the plain language of the severance agreement and the undisputed facts demonstrated each of the Hay/Hammer parties had released the wage and hour claims asserted in the pending litigation.

At the continued hearing on February 21, 2013, after giving the parties an opportunity for additional argument, the trial court agreed with Lawyers Title, ruling the wage and hour claims were barred by the express terms of the parties' contracts and "[n]one of the purported facts that have been proposed by plaintiffs are sufficient to raise a triable issue." First, the court found the release language was sufficiently broad to cover each of the claims alleged "as each of the causes of action alleged by the plaintiff is based upon plaintiff's employment." Then, the court concluded "paragraph 1 does not except any claims for additional compensation [from] the release set forth in paragraph 3. . . . The release in paragraph 3 of the severance agreement does not refer to the term accrued wages in paragraph 1 in that section that expressly excluded certain claims from the general release, such as payments to a retirement plan. . . . The only reasonable interpretation based upon . . . the express language of the agreement and the evidence submitted by the parties is that the term accrued wages was in reference to the final paycheck that plaintiffs were entitled to receive as wages indisputably owed. Any claim to additional amounts that are not indisputably owed by defendants would be released by the general release of the severance agreement."[3]

_____

[3] The court also found the severance agreement and release did not violate Labor Code section 206.5. The Hay/Hammer parties do not challenge this ruling.

The court also denied the motion for class certification.  It explained, because a motion for summary judgment had been granted against each proposed class representative, there remained no adequate class representative able to proceed with the litigation.

Judgment in favor of Lawyers Title was entered on March 22, 2013.  The Hay/Hammer parties filed a timely notice of appeal.

**DISCUSSION**

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  (*Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  The evidence must be viewed in the light most favorable to the nonmoving party.  (*Schachter*, at p. 618.)

2. *Standards of Contract Interpretation*

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract.  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; see also Civ. Code, § 1636.)  That intent is interpreted according to objective, rather than subjective, criteria.  (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126 (*Wolf*).)  When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement.  (See Civ. Code, §§ 1638 ["language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].)  The words are to be understood "in

8

their ordinary and popular sense" (Civ. Code, § 1644) and the "whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

Although parol evidence is inadmissible to vary or contradict the clear and unambiguous terms of a written, integrated contract (Code Civ. Proc., § 1856, subd. (a); *Wolf, supra,* 162 Cal.App.4th at p. 1126), extrinsic evidence is admissible to interpret the agreement when a material term is ambiguous. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*); see *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 39-40 [if extrinsic evidence reveals that apparently clear language in the contract is, in fact, "susceptible to more than one reasonable interpretation," it may be used to determine contracting parties' intent]; Code Civ. Proc., § 1856, subd. (g) [extrinsic evidence admissible to interpret terms of ambiguous agreement].) Whether an ambiguity exists is a question of law, subject to independent review on appeal. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)

As we explained in *Wolf, supra,* 162 Cal.App.4th 1107, when the meaning of words used in a contract is disputed, the trial court engages in a three-step process: "First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. [Citations.] When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or [when] extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury." (*Wolf,* at pp. 1126-1127, fn. omitted; see *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439

["[i]t is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence"]; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 [same].)

### 3. *Summary Judgment Was Proper on the Ground the Severance Agreement Barred the Hay/Hammer Parties' Claims*

#### a. *Interpretation of the severance agreement did not depend on the resolution of the credibility of conflicting extrinsic evidence*

The Hay/Hammer parties' sole argument for reversal of the order granting summary judgment is premised on a fundamental misunderstanding of governing law. They insist, when language in a contract is ambiguous and reasonably susceptible to two different interpretations, "the conflict raises a triable issue of fact which may not be resolved by summary judgment." As just discussed, however, interpretation of a written conflict is a question of law for the court unless that interpretation depends upon resolving a conflict in properly admitted extrinsic evidence. (*City of Hope, supra*, 43 Cal.4th at p. 395; *Parsons v. Bristol Development Co., supra,* 62 Cal.2d at p. 865 ["[t]he interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function"]; see *Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1504.) That the language of the contract itself might reasonably support two different constructions does not convert the issue into one to be resolved by the jury, nor does the introduction of extrinsic evidence to explain an ambiguity unless the proper interpretation of the contract depends on evaluating conflicting evidence. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390 ["[e]ven where uncontroverted evidence allows for conflicting inferences to be drawn, our Supreme Court treats the interpretation of the written contract as solely a judicial function"]; *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266-1267 [when extrinsic evidence is not in conflict, construction of an agreement is a question of law for the court "even if the evidence is susceptible to multiple interpretations"]; see also *Sprinkles v. Associated Indemnity Corp.*

10

(2010) 188 Cal.App.4th 69, 76 ["[w]hen the facts are undisputed . . . the interpretation of a contract, including the resolution of any ambiguity, is a question of law"].)

Here, there was no material conflict in extrinsic evidence sufficient to defeat summary judgment. It was not disputed the severance agreement was signed at or near the time each of the Hay/Hammer parties left his or her employment or that they each received a wage payment in addition to the severance benefit provided by the agreement. Similarly, it was not disputed that they had all been reclassified at one point from exempt to nonexempt employees, that they each believed they had claims for uncompensated overtime hours and missed meal and rest breaks and that LandAmerica Financial Group was aware there were unresolved wage and hour claims. Interpreting the scope of the release language in the severance agreement in light of those historic facts properly remained a judicial function. (See *City of Hope, supra*, 43 Cal.4th at p. 395.)

   b. *The trial court correctly concluded the Hay/Hammer parties released their wage and hour claims*

Implicit in the Hay/Hammer parties' argument summary judgment was improperly granted is their contention the trial court's interpretation of the severance agreement was incorrect. We review that question de novo. (*Parsons v. Bristol Development Co., supra*, 62 Cal.2d at pp. 865-866 & fn. 2; *Scheenstra v. California Dairies, Inc., supra,* 213 Cal.App.4th at p. 390.)

The Hay/Hammer parties concede, standing alone, the "complete release" language in paragraph 3 of the severance agreement would include what they repeatedly refer to as their "disputed wage claims." The release covers "all claims or demands Employee may have based on Employee's employment with the Company," which is unquestionably broad enough to encompass the claims for unpaid overtime and failure to provide meal and rest periods asserted in the *Chaffin* and *Hay* actions. (See *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 587 ["[t]he term 'all claims' includes 'claims that are not expressly enumerated in the release'"].) Nonetheless, citing Civil Code section 1641's directive that "[t]he whole of a contract is to be taken together, so as to give effect to every part," they assert this language must be read together with the

11

remainder of the agreement, and specifically with the language in paragraph 1 reserving the employee's right to accrued wages through the date of termination.

The Hay/Hammer parties are, of course, correct regarding the general principles to be applied to contract interpretation. But reading the severance agreement as a whole, the most reasonable construction is that confirmation of the employees' right to accrued wages through their date of termination, something protected by the Labor Code and not subject to waiver or release in any event (Lab. Code, §§ 206, 206.5), did not except their "disputed wage claims" from the comprehensive release they each signed. (See generally *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587 ["[w]hen a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee"]; *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 802 ["'[w]ages are not "due" if there is a good faith dispute as to whether they are owed'"].)

The severance agreement narrowly defines those few potential claims to be excluded from its otherwise comprehensive release language. Paragraph 3, the "complete release" provision itself, specifies only the right to retirement or other-ERISA related payments, if any, and certain health benefits are excepted from the scope of the release. In addition, paragraph 7 of the severance agreement provides, "This Agreement does not waive or release any rights or claims that Employee may have under the Age Discrimination in Employment Act that arise after the Effective Date." Even the "wages accrued" sentence in paragraph 1 defining severance benefits, which contains the language the Hay/Hammer parties rely on, is one of limitation, not preservation. It expressly notifies the employee only the severance payment as specified and accrued wages will be paid; "no further wage, vacation, incentive, bonus, or other similar payments from the Company" will be made.

If the disputed wage and hour claims were also to be included in the agreement's short list of exceptions to the severance agreement's general release language, those

12

claims needed to be explicitly identified: "'[Releases] of this kind are not to be shorn of their efficiency by any narrow, technical and close construction. . . . If parties intend to leave some things open and unsettled their intent so to do should be made manifest' [Citation.] 'The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release.'" (*Villacres v. ABM Industries Inc., supra,* 189 Cal.App.4th at p. 589; see generally *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 306 [absent extrinsic evidence to the contrary, "the release of 'all claims and causes of action' must be given a comprehensive scope"].)

4. *The Trial Court Properly Denied the Motion for Class Certification*

A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327; see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) Here, after granting Lawyer Title's motions for summary judgment, the trial court denied the class certification motion because the putative severance class was left without any proposed class representative.

On appeal the Hay/Hammer parties argue only, if we reverse the order granting summary judgment, we should also reverse the order denying class certification and return the matter to the trial court to address the motion on the merits. Because we affirm the order granting summary judgment, we similarly affirm the order denying class certification.

13

**DISPOSITION**

The judgment is affirmed. Lawyers Title is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.